Curia, per Woodworth, J.
This is an action of ejectment, to recover lot No. 6, in a patent granted to Morris and Treat, in the county of Chenango.
The plaintiff proved a power of attorney, from his lessor to Joseph Juliand, junior, dated March 2d, 1821, whereby Juliand was authorized to enter upon the premises; and to sell them, or contract for their sale.
In pursuance of this power, he contracted to sell the lot to John J. Storm, upon certain terms expressed in a written agreement, dated April 26th, 1823.
It appeared at the trial that the defendant held the possession under Peter B. Garnsey.
*In the spring and summer "of 1823, Storm went into possession of the lot under the agreement; and cultivated it as a farm. In 1824, Garnsey commenced an ejectment against him; and, while that was pending, applied to Storm’s brother, to prevail on him to procure a surrender of the possession, and urged him to write to the defendant, who was then residing in the state of Ohio; having left his wife and children in the occupation of the premises. Garnsey left a paper with Storm’s brother, containing a formal surrender; and desired him to forward it for signature; saying he would give something to the defendant’s wife if she would leave the premises. Storm’s brother wrote; but never heard of an answer. The wife left the farm; and Garnsey entered, and put the defendant in this suit in possession.
The plaintiff then proved, that in April, 1825, Ebenezer Covill entered into possession under the lessor of the plaintiff, with the consent of Mrs. Storm, who resided on the lot. Shortly after this, Garnsey requested Covill to surrender, which he at first refused. A suit was threatened; and Covill concluded to give up his possession; for which Garnsey gave him three dollars. Covill testified that he heard Garnsey say he had given Mrs. Storm 10 dollars for giving him the possession, or leaving the possession of the lot.
The defendant then attempted to show a prior possession of the lot. It appeared, that, at different times, pre *638 viously, the parties had alternately been in possession. In order to decide whether enough was shown to defeat the right to recover, which the plaintiff had made out prima facie, it will be necessary to state the evidence as derived from the case. ,
Ebenezer Huntley testified, that, in the spring of 1802, he applied to Garnsey’s agent, and received from him a certificate, by virtue of which he went into possession of the premises; and afterwards received a contract from Garnsey. That he continued in possession under him five or six years; and then sold his possession to one Abbot, and assigned to him his contract. Abbot continued in *possession, as the witness stated, perhaps two or three years; and then removed out of the country. Huntley further testified, that on the 1st of April, 1809, after he had assigned to Abbot, he took another contract for the lot under Livingston. Several witnesses proved that Huntley’s character was bad; and that he was unworthy of belief.
The plaintiff proved by Timothy Hoxton, that in 1811, he (H.) was in possession of Ho. 6 under Livingston, by virtue of an agreement which was read, dated October 11th, 1811. It stated that Hoxton had purchased at four dollars per acre, payable in five years. The defendant then produced a paper writing, dated February 14th, 1812, executed by the witness, Hoxton; and which stated that he had taken possession of lots 4, 5 and 6, the improvements on which, and the possession, had been lately purchased by Garnsey of Abbot; that Hoxton agreed to hold and occupy under him; and to pay rent. Hoxton further testified that he took a lease from Garnsey, of Ho. 4 and 5; but that Ho. 6 was inserted in the lease without his knowledge. In 1815, one T. Belknap held the premises under Livingston.
It appeared that in the same year, 1815, Levi Brooks was in possession of the lot under Garnsey. He was in possession sometime before taking a written contract; and after that, he remained in possession about two or three months. He was absent a short time to remove his family; and when he returned, he found another man in possession under *639 Livingston, the lessor of the plaintiff. ' An ejectment was brought against Brooks by Livingston; wherein he recovered, and Brooks was dispossessed.
The defendant offered to read the record of a deed from William Cutting and wife, to the lessor of the plaintiff, dated August 13th, 1803 ; and contended that the plaintiff claimed under that deed, which was void because the premises were held under an adverse title at the time of its execution. The evidence was admitted. The plaintiff insisted that he had made out a right of possession; and was entitled to a verdict. The court decided that the right of *possession involved a question of fact, which must be submitted to the jury. The parties then proceeded to the investigation of their paper title. ■ "
The judge, among other things, charged the jury, that if Grarnsey went into possession, by virtue of title acquired from Storm, he could not be allowed to set up his own title in this suit; but that, if he went into possession by virtue of his own title, claiming to hold under that exclusively, not deriving any interest from Storm, and having, after he had brought an ejectment, and after Storm had left the state, only persuaded or hired the family to quit the premises, in that case, Grarnsey would not be precluded from setting up his title in this suit.
The charge was, in, substance, a direction to the jury, that the plaintiff was nbt entitled to recover on his possessory right; and that the defendant was-not precluded from setting up title. There was no dispute about the fact, that Grarnsey hired Storm’s wife to quit, which she accordingly did; and this seems to have been considered as not impairing the right to set up an outstanding title.
It will not be denied, .that if the plaintiff ought to have • prevailed on his possession, the question whether his deed was void or not, is immaterial. It was sufficient to give color of .title ; and that is all which is necessary, with respect to the question of possession.
, The question of adverse possession, or the right of possession, is within the province of the jury, so far as to find the facts; not the law arising upon them. It is the duty *640 of the court to instruct the jury what the law is. In this case, the facts material to be considered, are not controverted.
I will first consider, what were the previous rights of the parties, on the supposition that no paper title had been offered or introduced; and, secondly, if the plaintiff established a right to recover on the ground of possession, whether the defendant was estopped from setting up title in this action.
The plaintiff made out, in the first instance, a valid possession of the premises by the contract of sale to Storm, in 1823, under which he entered. The possession has ""never been abandoned by the lessor of the plaintiff; but continued until Grarnsey induced the wife of Storm to quit, under circumstances which will be subsequently noticed. This simply constituted a right, prima facie, to recover, until the defendant should show a valid prior possession, under a claim or assertion of right. In Smith v. Lorillard, (10 John. 356,) the court say, “ It is, however, to be understood, in the case to which the rule of evidence applies, that the prior possession had not been voluntarily relinquished, without the animus revertendiS' It will be conceded that the defendant has shown a possession commencing in 1802, under Huntley, continued by him five or six years; and then for two years more under Abbot. This would bring the possession down to 1809 or 1810. Then Abbot removed out of the country; and, for aught that appears, the lot was left vacant. The next assertion of right, was on the part of the lessor of the plaintiff. Hoxton testified that in 1811, he was in possession under Livingston. The agreement to sell is dated October 11th, 1811. It does not appear that Hoxton entered upon any other tenant, or that Grarnsey had attempted to continue the possession from the time Abbot removed, until Hoxton entered. I therefore consider that the possession under Grarnsey, previously to 1811, had, in judgment of law, terminated, and become inoperative by reason of discontinuance. The next step appears to be this: On the 14th of February, 1812, Hoxton signed a lease, which, among other lots, included No. 6; by *641 which lease he agreed to hold and occupy under Garnsey To this evidence there are several answers. In the first place Hoxton took possession under a contract from Livingston, in 1811. It was not competent for him, by the lease from Garnsey, to change the relation in which he then stood with the lessor of the plaintiff. Beside ; no proof was offered that Hoxton ever entered, or held, or pretended to hold lot No. 6 under that lease, Such is the presumption from the fact that lot No. 6, as he testified, was inserted without his knowledge or authority. How long Hoxton continued on the lot under the lessor of the plaintiff, or how it was occupied between *1811 and 1815, no where appears; so that down to the latter period, the defendant has failed to establish a valid prior possession.-
In 1815, the defendant proved a possession in Brooks, under a contract with Garnsey. He remained in possession subsequently, two or three months; but this possession terminated by a recovery in ejectment, under which he was dispossessed. From that time down to the entry of the defendant in 1825, he gave no evidence of a possessory right. Thus, then, it appears that the lessor of the plaintiff had the undisturbed possession, at least, from 1823, until 1825; and that his right had been fortified by a recovery in ejectment in 1815. The effect of such a recovery was decided in Jackson v. Rightmyre, (16 John. 314,) where it was held, that although a prior possession under a claim of right, and not voluntarily abandoned, will prevail in ejectment over a subsequent possession acquired by mere entry without any lawful right; yet, where the subsequent possession of the defendant-is acquired by a recovery and execution in ejectment, it affords a better presumption of right than the prior possession. It is clear, therefore, that the plaintiff made out a valid possession ; and the defend ant did not establish a valid prior possession.
The remaining inquiry is, whether the defendant was estopped from giving evidence of title. The fact is established, that the family of Storm being in possession, Garnsey commenced a negotiation to obtain it. He said he had a valid deed of the land. He desired the possession merely *642 and admitted he had given Mrs. Storm 10 dollars, for the possession of the lot. He also paid 3 dollars to Covill, who came in under Mrs. Storm, for a surrender of his part.
The question then arises, whether a person who has contracted for land, and gone into possession, is authorized by law, to dissolve the relation existing between him and the vendor. The consequence of such a doctrine would be in every case, to require the vendor to make out a paper title, in case he attempts to regain possession; whereas, if it is not competent for the vendee to throw off his *allegiance, the vendor can recover on the ground of his possession against him who may even have good title to the premises.
It will be conceded that here was not the relation of landlord and tenant; for Storm entered under a contract to purchase. He was, therefore, not strictly a tenant. (6 John. 46.) To test the merits of this defence, it may be asked, could Storm set up title; and thus defeat an action by Livingston against him, to recover possession? I apprehend not. The case of Jacklson v. Harder, (4 John, 202,) decides, that a claim or title which could not be set up by a person while in possession, can not be set up by another person who comes into possession, under him. This doctrine was applied to the case of a person who came into possession, either as an intruder, or under one who had purchased; and in either case, it was held that he was precluded from questioning the plaintiff’s right of possession. The case of Jackson v. Bard, (4 John 230,) was this: Dickenson entered under an agreement to purchase. About ten months after, he executed a mortgage to the vendor, and received a deed. Before Dickenson gave the mortgage, one Smith entered, under an agreement to purchase from Dickenson; and subsequent to the date of the mortgage, Dickenson executed a deed to Smith, from whom the defendant derived title. In an action of ejectment by the assignee of the mortgagee, the defendant contended that at the date of the mortgage, there was an adverse possession; and, therefore, the property could not pass by *643 the deed. The court held, that the possession was not ad verse, nor hostile to the title of the vendor. Thompson, J., in giving the opinion of the court, says, “ Dickenson could not have set up against Barton” (the vendor) “ an adverse holding; and Smith, who claimed under him, must be considered as standing in the same situation.” This case is, in principle, like the one before us. Here Garnsey purchased the possession of Mrs. Storm. If paying her for that possession, inducing her to quit, and then entering himselfj is not an entry under the person who contracted with Livingston, or those representing *the purchaser from Livingston, I am at a loss to determine what constitutes an entry under another. The case of Jackson, ex dem. Brown v. Ayers, (14 John. 224,) seems to me to be conclusive on the point. There the lessor of the plaintiff claimed a right to recover, under an agreement to sell the premises to the defendant, he then being in possession. The defendant offered to prove an outstanding title at the time of the agreement. The court say, “ the agreement to purchase, was an acknowledgment of the title of the plaintiff ; and would estop the defendant from setting up an outstanding title.” Many other cases might be cited; but I deem it unnecessary. If, then, Storm, had he been defendant, could not set up a title in Garnsey, it is 'equally clear that a person who came in under him can not. If Garnsey did not come in under Storm, or those who represented him, I ask, how did he obtain possession ? The premises were not vacant. The entry was not by force. The lot was in the actual occupation of Storm’s family. Did they abandon without a compensation, or concert with Garnsey ? The contrary appears. He held out inducements which were successful. The actual possession was an object worth contending for, in a case where the title was involved in difficulties. But if the title is perfect, much was gained by immediate possession. That was the object sought after, paid for and obtained. After it was obtained, to say nothing was acquired under Storm, is, to my mind, an absurdity. The plaintiff was entitled to the benefit of Storm’s possession, thus acquired by the defend *644 ant. It is alike the dictate of justice as of law, that the defendant restore it, before he can be permitted to show title in himseli or an outstandiiig title in another.
I am of opinion that the verdict be set aside, and a new trial granted, with costs to abide the.event.
Hew trial granted.