WHITNEY <i>vs.</i> WRIGHT.

A *prior possession* is sufficient to entitle a party to recover in an action of
ejectment against a mere intruder or wrong doer, or a person subsequent-
ly entering without lawful right, if the action to regain the prior posses-
sion be brought within a reasonable time ; if, however, there has been de-
lay in bringing the suit, the *animus revertendi* must be shown, and the delay
must be satisfactorily accounted for, or the prior possessor will be deemed
to have *abandoned* his claim to the possession—and it was accordingly
ly HELD, in this case, where there was a prior possession of *eleven years*,
and then an entry by the defendants claiming under a title adverse to such
possessory title, that the omission to bring a suit for *thirteen years*, with
knowledge of the adverse entry and continuance of possession under it,
would authorize a jury to find an abandonment of claim by the prior
possessor.
An entry by a defendant, under a recovery in an action of ejectment against
a person in possession, is sufficient to bar a recovery of the premises in a
subsequent action of ejectment by a plaintiff who relies merely upon a *prior*

*possession,* although such possession was continued for a period of *eleven years,* and no connection existed between the defendants against whom the recovery was had and the present plaintiff.

A possession under an executory contract for the purchase of land renders void a deed executed under a title adverse to such possession ; and evidence of want of confidence by the possessor in the title under which he holds, and of belief in the better title of the individual executing such deed, does not estop him from objecting to the validity of the deed ; at all events, he is at liberty to show that he possessed the premises under a claim of title adverse to that of the grantor of the deed.

THIS was an action of ejectment, tried at the Washington circuit in November, 1833, before the Hon. ESEK COWEN, then one of the circuit judges.

The premises claimed are 40 acres of land, part of lot No. 25, in the Artillery patent, situate in the town of Fort Ann. The plaintiff produced the following documentary evidence ; 1. A *quit-claim* deed from James Barker to Ezra Barker, dated 17th December, 1808, conveying about 75 acres of land, and embracing the premises in question ; 2. A *quit-claim* deed from Ezra Barker to Oliver Cleaveland, dated 22d July, 1816, consideration expressed $1000, conveying the premises in question ; and 3. A *quit-claim* deed of the same premises, from Oliver Cleaveland to the plaintiff, dated 16th January, 1833, consideration expressed $1000. In addition to which the following parol proof was given : A witness testified that he had known lot No. 25 for the period of 36 or 37 years ; that the first possessor of the lot was *Joel Harvey,* from whom the possession went to a person of the name of *Carter,* from Carter to *Reynolds,* from Reynolds to *Childs,* and from Childs to *James Barker,* the grantor of the first quit-claim deed produced by the plaintiff ; and that *Harvey, Carter* and *Reynolds,* while in possession, *claimed to own the land.* It was proved that Ezra Barker resided on the premises in 1810, and so continued until he sold, in 1816, to Cleaveland, who went into and remained in possession of the premises but a few months, when he removed to Saratoga, and put one *Bingham* in possession, as his tenant, who was to occupy the premises on shares. Bingham remained in possession two or three years, when he quit, and a person of the name of *Porter* went into possession. *Cleaveland,* the grantor of the plaintiff, who was examined as a

witness for the plaintiff, on his cross-examination, testified, that he divided crops with *Bingham* only *one* season ; that he never had a tenant on the premises other than Bingham, nor had he possession of the same, either himself or by tenant, after Bingham quit ; that he had understood that the premises had been occupied in hostility to him ever since Bingham left the possession. He supposed his title was good, but thought it would cost as much as it was worth to get it ; he had intended to assert his claim, but postponed doing so from year to year ; he sold to the plaintiff for a mere trifle, $40, telling him at the time of the sale that he did not want a lawsuit, and for that reason sold to him. It was proved that the defendants entered into possession of the premises between 10 and 12 years previous to the trial, claiming to enter under a contract with one *Jillett ;* and that they had remained in possession ever since. After they were in possession they refused to make line fences with their neighbors, saying they had no title, and expressed their belief that Jillett had none, and that he could not procure any from a Mr. Colden, from whom he had agreed to procure it, and that Cleaveland's title was better than Jillett's. It was also proved that they proposed to go to Cleaveland to purchase of him ; that they called upon him to ascertain what he would take for the premises, and that he told them he had sold to the plaintiff. Upon this evidence the plaintiff rested.

The defendants' counsel offered to prove that in 1819 C. D. Colden was put into possession of the premises in question by virtue of a writ of possession, under a recovery in an action of ejectment prosecuted by him against *Porter,* who had gone into possession of the premises after Bingham left, and remained in until turned out, by virtue of the writ of possession ; that *Colden* obtained the possession, claiming title hostile to the title of *Cleaveland,* and of those under whom he held ; and after so obtaining the possession, contracted to convey the premises to Daniel Jillett, and put him into possession of the same ; that Jillett continued in possession until the winter of 1812, when he sold his contract to the defendants, and agreed to procure them in the following summer a good deed from Colden, and that under such contract the defendants forthwith

entered, and have ever since remained in the possession and occupation of the premises ; and insisted that the facts thus offered to be proved, if received in evidence, would authorize the jury to find that the possession of the defendants was *adverse*, at the date of the deed from Cleaveland to the plaintiff, and that consequently such deed was void ; and also that'the evidence would show a better right. in the defendants to the possession than had been shown in the plaintiff. The counsel further insisted that from the evidence adduced, and offered to be given, the defendants were entitled to have submitted to the jury the question, whether Cleaveland had not voluntarily *abandoned his prior possession;* and if the jury should find such abandonment, that then, upon that ground, the defendants would be entitled to a verdict in their favor. The judge excluded the evidence offered, and decided the several questions of law thus raised, against the defendants ; and the jury, by his direction, found a verdict for the plaintiff. The defendants tendered a bill of exceptions, and now moved for a new trial.

*S. Stevens,* for the defendants.

*M. T. Reynolds,* for the plaintiff.

*By the Court,* Bronson, J. The plaintiff relies on the possession of those under whom he claims, without showing that they ever had a paper title to the property. Harvey, Carter, Reynolds and Childs were successively in possession of the premises before James Barker entered and conveyed to his son : but it does not appear *when* Harvey, the first occupant, went into possession, nor how long he or either of the other persons named, occupied the property. Harvey, Carter and Reynolds, when in possession, severally claimed to own the land ; but it is not stated that Childs either claimed any interest in the land or that he entered under Reynolds, who preceded him. There is then nothing to connect him with the previous possession. So far as appears, Reynolds may have voluntarily abandoned the possession, and Childs may have entered, without claim or color of right, upon the vacant

property ; and as to James Barker, who succeeded Childs, it does not appear that he entered under Childs, or was in any way connected with the previous possession. All the case shows is, that he was in possession at or about the time he conveyed to his son Ezra. The plaintiff cannot therefore derive any aid from the possession of the property anterior to the deed of December 17, 1808. Ezra Barker was in possession under the deed from his father until he sold to Cleaveland in July, 1816. Cleaveland was in possession for a few months, and then removed to Saratoga in the fore part of the winter of 1816–17, leaving one Bingham in possession as his tenant, who, as the witness says, took the place on shares. Although Bingham remained on the land two or three years, the relation of landlord and tenant seems not to have been practically maintained between him and Cleaveland, beyond a single year—the year 1817. The plaintiff has thus shown a possession of about nine years ; and if Bingham was two or three years in possession, and was all the time a tenant to Cleaveland, then the plaintiff has made out an occupancy of ten or eleven years by those under whom he claims. Porter went in after Bingham ; but it does not appear that he was in any way connected with the previous possession, and Cleaveland swears that he never had any other tenant than Bingham, nor any possession of the property after Bingham left it. Since the year 1819, if not for a longer period, the persons under whom the plaintiff claims have been out of possession. This suit must have been commenced after the deed from Cleaveland to the plaintiff, which is dated in January, 1833 ; so that thirteen years at the least had elapsed between the time when Cleaveland parted with the possession and the time when his grantee attempted to regain it. Still the prior possession of ten or eleven years may be sufficient to sustain this action, if that possession was not voluntarily abandoned, and no better right has been shown on the part of the defendant.

Possession of land under a claim of right always affords some evidence of title. An adverse holding for twenty years will bar an entry by the true owner ; and such a possession for a shorter period will prevail against a mere intruder or wrong doer. On an indictment for a forcible entry and de-

tainer, it is enough that the party was in the peaceable possession of the land until he was forcibly dispossessed by the defendant, *The People* v. *Leonard*, 11 *Johns. R.* 504 ; and a party may recover in ejectment on a possession of only three years against one who tortiously entered upon him, without any claim or color of right. *Jackson, ex dem. Murray*, v. *Hazen*, 2 *Johns. R.* 438. But it should be observed in this case, that the action was brought immediately after the injury. In *Smith, ex dem. Teller*, v. *Lorrillard*, 10 *Johns.R.* 338, the ancestor of the lessors of the plaintiff entered into the possession of the property in 1768, and held it until his death in 1775 ; and his family continued in possession afterwards, until they were expelled from the premises, which were in the city of New-York, by the British in 1776. The defendant entered, claiming title as a bona fide purchaser in 1795. It was held that the prior possession of the ancestor under a claim or assertion of right, though short of twenty years, would prevail over a subsequent possession short of that period, where no other evidence of title appeared on either side. The court said that there was a peculiar force attached to the prior possession on which the plaintiff relied. There was a descent cast during its existence, and the infant heirs of the ancestor were driven from the actual possession by a public enemy, who destroyed the improvements on the property. The rule of evidence adopted in this case was further guarded by the remark, that it would only apply where the prior possession of the plaintiff had not been voluntarily relinquished without the *animus revertendi*, and that the subsequent possession of the defendant was acquired by mere entry, without any lawful right. In *Jackson, ex dem. Murray* v. *Denn*, 5 *Cow.* 200, the lessor of the plaintiff, and those under whom he claimed, had been in possession from 1805 to 1821 or 1822, when the plaintiff's tenant left the premises, and the defendant entered on the vacant possession in December, 1822, without any claim or color of title. It was held that the plaintiff was entitled to recover on the strength of his prior possession : but the reason why the premises had been left vacant, was explained by proving that the plaintiff did not know his tenant had left the property, until he found the defendant in posses-

sion. In *Jackson, ex dem, Livingston,* v. *Walker,* 7 *Cow.* 637, 641, the defendant, who held under one Garnsey, among other things, set up a possession prior to that on which the plaintiff relied, and proved an occupancy by persons holding under Garnsey, from 1802 to 1809 or 1810, when the property was left vacant; and in 1811, one Hoxton entered under the plaintiff. It did not appear that Hoxton entered upon any other tenant, or that Garnsey, the previous claimant, had attempted to continue the possession. The court said that the possession under Garnsey, previous to 1811, had in judgment of law terminated, and become inoperative by reason of discontinuance.

In the case now before the court, the evidence to show that Cleaveland had abandoned the possession, was, in my opinion, sufficient to go to the jury, and they would have been warranted in finding a verdict for the defendants on this ground alone. After a possession of ten or eleven years, he suffered the property to pass into the hands of Porter, who was a stranger to his right, and subsequently into the hands of persons claiming adversely to his title; and this possession he permitted to continue for thirteen years, without any attempt whatever to regain the enjoyment of the property. He knew, as he testified on the trial, that the premises had been occupied in hostility to him ever since Bingham left the possession. He intended to assert his claim to the property himself, but put it off from year to year. He supposed his title was good, but he thought it would cost as much as it was worth to get it. Taking the whole of his testimony together, it is evident that he never had any settled purpose of attempting to regain the possession. He sometimes thought of such an effort, but doubts concerning the validity of his title, and fears about the expenses of the litigation, always determined his mind in favor of acquiescing in the existing state of things. He says he did not wish to get into a lawsuit about it, and he sold to the plaintiff for a mere trifle—forty dollars. He told the plaintiff when he sold to him, that he did not want to have a law suit about it, and that was the reason why he sold.

It cannot be very important that Bingham, Cleaveland's tenant, and not Cleaveland himself, abandoned the possession, since Cleaveland knew that his tenant had quit, and the possession had passed into adverse hands. Under such circumstances, and without any excuse for the omission, his neglect for so long a period to assert his right, in any manner whatever, makes the case nearly if not quite as strong as though he had himself abandoned the property, and left the possession vacant when he removed to Saratoga. In the case of *Jackson* v. *Walker*, already cited, it was a person holding under Garnsey, and not Garnsey himself, who abandoned the property; and yet the court held that the previous possession of Garnsey had, in judgment of law, terminated, and become inoperative by reason of discontinuance. The possession of land under a claim of right, in the absence of all other proof, authorises the presumption of a legal title. The presumption rests on the ground, that the true owner would not suffer another to enjoy his property without making any return, and certainly not in hostility to his title. If the occupant abandons the possession, or, what is the same thing, suffers it to pass into the hands of a stranger, without any effort within a reasonable time to regain it, or any excuse for the omission, the orignal presumption in favor of his title must give place to another presumption in favor of a better right in the new occupant. The plaintiff stands in need of the application of such a rule in this very case. He claims on the ground of a possession commenced in 1808, by James Barker; but it appears that several persons had been in possession anterior to that period, and if the presumption of title which existed in their favor while in possession, has not given place to another presumption in favor of the subsequent occupants, the plaintiff has shown a title out of himself. But the answer no doubt is, that Harvey, Carter, Reynolds and Childs, who were successively in possession before Barker, have severally lost all presumption of right in their favor, either by voluntary abandonment, or by suffering the property to pass into other hands, without attempting to regain it.

Thus far the case has been considered as though the possession subsequent to that on which the plaintiff relies, had

been acquired by mere entry, without any other evidence of right. But the evidence offered by the defendants would have made the case much stronger. They offered to prove that Cadwallader D. Colden, 14 years before the tral, (consequently in 1819,) obtained possession of the premises by a recovery and writ of possession in an action of ejectment, brought against Daniel Porter, Colden claiming title hostile to that of Cleaveland; that Colden, after he had so obtained possession, contracted to sell the property to one Daniel Jillet, and gave him possession and a contract for a deed; that Jillet went into possession claiming title under the contract, and held until the winter of 1822, when he sold his contract to the defendants, and agreed to get them a good deed from Colden the June following; that the defendants went immediately into possession, and have held ever since, claiming title under the contract. The defendants' counsel insisted that this evidence, in connection with the other facts in the case, would constitute a good defence to the action on several grounds; but the evidence was rejected, and the jury were instructed to find a verdict for the plaintiff. I think the evidence should have been received. If Cleaveland, or any one holding under him, had been a party to the judgment, the entry of Colden under it, would of itself, and without any subsequent acquiescence, have afforded a better presumption of right than the prior possession of Cleaveland, *Jackson, ex dem. Klock,v.Rightmyre, in error,* 16 *Johns.R.*325. Such an entry terminates all presumptions in favor of a prior possession without evidence of title. *Jackson,ex dem.Hills,* v. *Tuttle,*9 *Cow.*239. *Jackson* v. *Walker,* 7 *Cow.* 642. Although it does not appear that Porter, against whom Colden recovered in the ejectment, held under Cleaveland, yet Colden could not have recovered without showing a title, or a right to the possession in himself. His entry was a lawful entry, made not only under a claim, but with color of title. If it did not at once terminate all presumption in favor of the right of Cleaveland, yet, when followed by an adverse possession of thirteen years, with the acquiescence which has been mentioned, it was, in my opinion, abundantly sufficient to put Cleaveland and those claiming under him, to show something

more than a mere naked possession of ten or eleven years prior to the judgment.

There is another objection to this verdict. At the date of the plaintiff's deed, the land was held adversely to Cleaveland, his grantor, and the deed was consequently void. The evidence given on the part of the plaintiff was not sufficient to preclude the defendants from denying Cleaveland's title. It proved· that the defendants were apprehensive that they should not procure a good title under their contract with Jillett, that they were consequently unwilling to expend money in making fences on the land,. and that they had entertained the thought of purchasing under Cleaveland; but they did not enter under him, and they had never attorned to, nor agreed to hold under him. In *Jackson* v. *Cooly*, 2 *Johns. Cas.* 223, the defendant had agreed to take a lease of the premises from the lessors of the plaintiff; but as it did not appear that a lease had in fact been executed, or that any rent had been paid, it was held that the defendant was not precluded from denying the lessors' title. That was a stronger case than the one under consideration.

But there is another answer to the plaintiff's evidence on this point. However forcible that evidence may have been, the defendants clearly had the right to be heard on the question; and they offered to show that their possession had at all times been adverse to the right of Cleaveland—that they had at all times held, *claiming title under the contract* with Jillett. The circuit judge certainly did not intend to say that the defendants were not at liberty to give evidence to explain or contradict evidence, which had been adduced against them. · He probably intended to decide, that from the nature of the case, the defendants could not hold adversely; and this brings us to the question whether a person who enters upon land under a contract to purchase may not hold adversely to all the world, excepting only the vendor and those claiming under him. Neither Jillet, who entered under a contract from Colden, nor the defendants, who entered under a contract from Jillett, could hold adversely to Colden. *Jackson* v. *Bard*, 4 *Johns. R.* 230. *Jackson* v. *Camp*, 1 *Cowen*, 605. *Jackson* v. *Johnson*, 5 *id.* 74. But I am not aware of any decision that

a person, entering upon land under an executory contract to purchase, may not hold adversely as against third persons. In *Clapp v. Bromagham,* 9 *Cowen,* 550, Chancellor Jones, in delivering the unanimous opinion of the court for the correction of errors, said he attached no importance to the objection that the person who set up an adverse possession claimed only under *an agreement* for the purchase of the farm, and did not produce a deed. The title was equally adverse to the petitioners, (who were strangers to the agreement,) whether it was held under the agreement or the deed of Peter, the vendor, claiming to convey or to contract for the conveyance of the farm. The reporter, as will be seen by the marginal note, thought this decision overruled the case of *Jackson* v. *Johnson.* Whether he be right in this supposition or not is not material to the present inquiry, but I think there is no necessary conflict between the two cases—the one only decides that the vendee, under an executory contract to purchase, does not hold adversely to the vendor—the other that he may hold adversely as against third persons.

Should it be conceded that the defendants could not hold adversely, on the ground that they did not enter under a claim of the entire title, but only in the expectation of procuring a title on performing the contract, that would not aid the plaintiff's case. Although, strictly speaking, the relation of landlord and tenant did not exist between the parties, the possession of the defendants was in judgment of law the possession of Colden, under whom they entered. *Jackson* v. *Johnson,* 5 *Cowen,* 74. The entry and possession of Colden was clearly adverse to the right of Cleaveland, and it can hardly be denied that a continued possession and claim of title under him, by a purchaser, was an adverse holding as against Cleaveland, either in the vendor or the purchaser; and whether by the one or the other, the deed from Cleaveland to the plaintiff was void on the ground of maintenance.

The evidence offered by the defendant should have been received, and there must consequently be a new trial.

New trial granted.