# S. U P R E M E   C O U R T,

## OCTOBER TERM, 1847.

~~~~~~~~~~

### CROCKETT vs. MORRISON.

1. An admission by a party to a suit that the suit must go against him, is not admissible against him. It is at most but an admission of law—and not an admission of facts alone.

2. A possession of less than twenty years will prevail against a subsequent possession of less than twenty years, provided the former was under a claim of right and has not been aban doned.

**ERROR to St. Louis Circuit Court.**

BRIGGS, *for Plaintiff in error.*

POLK, *for Defendant in error,*

Makes the following points in support of the judgment of the Circuit Court:

1. Taking the instructions in the reverse order in which they were given and stand with the :ll of exceptions, I maintain that the second instruction given by the court, which is in substance .at the admissions of defendant, Morrison, as to his *title* to the lot, were incompetent evidence, the unquestionable law applicable to the case. See stat. of Frauds; 15th Johnson's Rep., 234, ad 6 do., 21.

2. Nor was the court below wrong in giving the first instruction prayed by defendant's counsel. , Wend., 171; 4 John. Rep., 202; 4 Har. & McH., 72; 2 Roscoe on Real Actions, 581; (19 Law Iibrary, 3rd series, 167;) 6 Cow. Rep., 751; 3 John. R., 269; 16 do., 314.

The court below was warranted by the law in this case in overruling defendant's motion for .v trial.

ᴛAPTON, J., *delivered the opinion of the Court.*

This was an action of ejectment by Crockett, to recover a lot of ground ;t. Louis. The suit took place in May, 1845, and the defendant had 'rdict and judgment.

The plaintiff, to maintain his right to the possession, gave in evidence a copy of a deed from Hypolite Bolon to Francis, Edward and Lewis Bricknell, sons of Francis Bricknell, sr., dated August 22d, 1811, having first accounted for the loss of the original. The plaintiff also produced a deed from Francis Bricknell, jr., to himself, conveying, in consideration of fifteen hundred dollars, the lot referred to in the deed from Bolon to himself and brothers, and all his real estate in the State of Missouri. This deed was dated 25th April, 1842. The plaintiff then introduced witnesses who knew Hypolite Bolon in 1810, and for several years after, and who stated that he was, during this acquaintance, in possession of the lot in controversy, and claimed it as his own. He had been dead for several years. The plaintiff also proved by a certificate from the parish register of births and baptisms of the Catholic church of St. Louis, that Francis, son of Francis Bricknell and Catharine Roi, his wife, was born 29th June, 1805.

One of the plaintiff's witnesses testified, that on the day before the trial, he had a conversation with the defendant about this suit, and asked defendant if he was not going to the court house to see about the defence of the case; to which defendant replied, "no, that he did not intend to trouble himself about it; he supposed he should lose the case any how, and he should give himself no trouble about it."

On the cross-examination of another witness by defendant, the witness stated that he had often hauled lumber on the premises for George Morton, and that Morton has had possession of the lot for twenty odd years; that he had often heard Morton say that he had bought the lot and paid for it, and had a good title to it. This witness also stated that he had known Jean Baptiste Vieri in possession of the lot, but could not say positively whether before or after Bolon's possession. Old man Bolon's niece also lived on the lot at one time, and after Bolon lived there; and Dr. Ablois possessed the lot after said niece. This was all the evidence, and at the instance of defendant, the court gave the following instructions:

"Unless the jury are satisfied from the evidence that Hypolite Bolon, and those claiming under him, had possession of the premises for twenty years previous to the possession thereof by George Morton, they will find for the defendant."

The court also instructed the jury, that the statements made by the witness in regard to the admissions made by the defendant, Morrison, as to his title to the lot, were incompetent evidence, and should be disregarded.

Exceptions were taken to the opinions of the court, and the case brought here by writ of error.

We will first consider the last instruction given by the court, in which the jury are directed to disregard the evidence of Morrison's admissions relative to the expected result of the trial.

If the statements or declarations of Morrison possess the character which this instruction would appear to attribute to them—if they be admissions illustrative of the possession or title of Morrison, they would be competent evidence. Where there is no title in the case, except such as may be deduced from possession, the declarations of a party in possession are admissible as part of the *res gestae* to explain the character of that possession. Turner vs. Belden, 9 Mo. R., 797. It is also true, that a tenant's declarations are inadmissible to affect a documental title, and that such testimony would be a plain violation of the statute of frauds. Jackson vs. Shearman, 6 J. R., 19; Jackson vs. McVey, 15 J. R., 234.— In this case, there was no documental title on either side, and the declarations of Morrison, who was in possession at the time they were made, if they can be construed as admissions relative to his possession of title, would be competent. But the declarations of Morrison, upon which this instruction was based, scarcely deserve the name of admissions. They seem rather to have been hasty and inconsiderate answers to questions which might have been thought impertinent. The conduct of the declarant in appearing by his counsel on the day succeeding the one on which the conversation took place, was calculated to give it this character. But if the declarations were otherwise, and they expressed the deliberate conviction of the defendant at the time they were made; they are still inadmissible. The admission is, "that the defendant should not attend court or pay any attention to his suit, as he was satisfied or supposed it would go against him." What is this but an admission by a party of what the law is? It is not a mere admission of facts, for the result of the suit depended on questions of law as well as fact, and to admit that the suit must terminate unfavorably to the defendant, must be an admission that the facts and the law arising on those facts were against him. It is well settled, that the admissions of a party in relation to a question of law, is no evidence. Such admissions do not make the law either one way or the other, and where the matter admitted involves a question of law as well as fact, it falls within this rule, and is therefore, incompetent proof. Polk's lessees vs. Robertson, 1 Tenn. R., 463; Boston Hat Man. Co. vs. Messenger, 2 Pick., 223; Craig vs. Baker, Hardin's R., 280; Leforce vs. Robertson, Littell's Sel. Ca., 22.

The second instruction given by the court declared the law to be, that twenty years possession in Hypolite Bolon and those claiming under him, was necessary to sustain this action.

As the action of ejectment is a possessory action, where no title appears on either side, a prior possession, though short of twenty years, will prevail over a subsequent possession which has not ripened into a title, provided the prior possession be under a claim of right and not voluntarily abandoned. The reasons upon which this doctrine is based, are very clearly stated by Judge Kent in Smith vs. Lorillard, (10 John. R., 355,) "That the first possession should in such cases be the better evidence of right, seems to be the just and necessary inference of law. The ejectment is a possessory action, and possession is always presumption of right, and it stands good until other and stronger evidence destroys that presumption. This presumption of right every possession of land has in the first instance, and after a continued possession of twenty years, under pretence or claim of right, the actual possession ripens into a right of possession which will toll an entry. But until the possession of the tenant has become so matured, it would seem to follow, that if the plaintiff shows a prior possession, and upon which the defendant entered without its having been formally abandoned as derelict, the presumption which arose from the tenant's possession is transferred to the prior possession of the plaintiff, and the tenant, to recall that presumption, must show a still prior possession; and so the presumption may be removed from one side to the other, *toties quoties,* until one party or the other has shown a possession which cannot be overreached, or puts an end to the doctrine of presumptions founded on mere possession, by showing a regular legal title or a right of possession."

This doctrine is recognized by the New York court, in a variety of cases. Jackson vs. Hazen, 2 John. R., 22; Jackson vs. Myers, 3 J. R., 388; Jackson vs. Harden, 4 J. R., 202; Jackson vs. Rightmyse, 16 J. R., 314; Jackson vs. Denn, 5 Cow. R., 200; Jackson vs. Walker, 7 Cow., 637; Jackson vs. Wright, 15 Wend., 177.

In all these cases, it will be found that the defendants, against whom a recovery was permitted, were *mere trespassers,* and that they, or those under whom they claimed, or from whom they obtained possession, entered upon the actual or constructive possession of the plaintiffs.

The evidence on the record, in this case, is of the most meagre and unsatisfactory character. It was proved that Bolon was in possession in 1810, under a claim of title, and that he continued in possession for several years, but how long is not stated. After Bolon, we next find his

niece in possession, but under what circumstances her possession was taken, or how long it continued, is not proved. The presumption must be, in the absence of all proof to the contrary, that it was a rightful possession, and therefore adverse. La Franbiz vs. Jackson, 8 Cow., 614.— If a person be in possession of property, and nothing appears as to the character of that possession, the presumption is that he is the legal owner. Where title appears, the presumption is just the reverse, for then every presumption is, that the possession is held under the true owner and in subordination to his title. An adverse possession, in such cases, is never presumed, but must be proved.

After the possession of Bolon's niece, Dr. Ablois is found in possession, and the same presumption arises as to the character of his possession, for there is no proof of its character, nor of the length of time it continued. After Dr. Ablois, George Morton was proved to be in possession, under a claim of title, and his possession had continued for upwards of twenty years *before the time of trial.* The witness who spoke of Morton's possession, was permitted to say, that he had been informed by Morton several times that he had bought and paid for the land and had a good title. This evidence, we suppose, was admitted for the purpose of showing that Morton's possession was adverse, and that he *claimed* title. There was no evidence to show whether the defendant held under Morton or was a trespasser upon Morton's possession.

It will be observed that there is no evidence whatever to connect the possession of Bolon with that of his niece, or any of the persons subsequently found in possession of this lot. It does not appear whether the possession was vacant at the time the several entries were made, or whether the several successive occupants were trespassers. In the absence of all proof on this subject, I am inclined to think that the legal presumption would arise that there had been an abandonment by Bolon, and if the jury found the facts as I have stated them, the plaintiff could not recover. At all events, these facts would be evidence proper for the jury to consider, as evidence of abandonment.

It is essential to sustain the action of ejectment that the plaintiff should have a right of entry. Where the plaintiff has a documental title, or a title growing out of an actual adverse possession for twenty years, this right of entry cannot be tolled except by the bar of the statute of limitations. By the common law, a right of entry would be taken away by descent, by discontinuance, by fine and non-claim, as well as by an adverse possession of twenty years. But these doctrines, I apprehend, are obsolete and inapplicable to our laws. Where the plaintiff relies on pos-

session alone, this right of entry may be lost otherwise than by the bar of the statute. The plaintiff must recover on the strength of his own title, and it must be shown that his possession, upon which alone he relies, has not been voluntarily abandoned. This is done by showing that the defendant entered upon his possession, or upon the possession of some one holding under him, or trespassing upon him, without any title. Thus, in Jackson vs. Hardin, (4 J. R., 202) it appeared that one Baker held the premises for several years under a contract with the plaintiff, and that the defendant intruded on Baker, or entered upon the possession by connivance with Baker. In either event, the court held that the plaintiff could recover, for, if he entered as a tenant to Baker, neither he or Baker could deny the plaintiff's title, and if he entered as a trespasser, the possession of Baker was the possession of the plaintiff, and therefore the possession of the plaintiff was intruded upon. So in the case of Jackson vs. Lorillard, the plaintiff's ancestor had been in possession for several years prior to the revolutionary war, and left his widow and children in possession. At the time of the invasion of New York, in 1776, the family were driven out, and the British took possession and destroyed the improvements on the property. Ten or fifteen years after this, the defendants entered, and although the premises were actually vacant, the court applied the doctrine of the *jus postliminii*, which revested the possession in the heirs on the removal of the hostile force. The presumption of abandonment, which might otherwise have arisen, was in this way rebutted, and the possession of the defendants was therefore regarded as an intrusion upon that of the plaintiff. In Whitney vs. Wright, (15 Wend., 177) the plaintiff showed a possession of about nine years, and after its termination, it appeared that others were in possession, but no connexion was shown between their possession and the previous possession. Thirteen years elapsed before plaintiff endeavored to regain possession, and the court considered these facts sufficient to warrant a jury in finding an abandonment. In Jackson vs. Denn, (5 Cow., 200) it appeared that defendant entered on a vacant possession, but the reason why the premises had been left vacant was explained by proof that the plaintiff did not know that his tenant had left the property until he found the defendant in possession. In Jackson vs. Walker, (7 Cow. R., 637) the defendant attempted to show a prior possession in one Garnsey, under whom he claimed, but it appeared that after Garnsey, one Hoxton was found in possession, and it did not appear that Hoxton had entered upon G. or any tenant of his. The court therefore considered that the possession under G. had in judgment of law terminated and become inoperative by

reason of discontinuance. Judge Woodworth, in Whitney vs. Wright, (16 Wend., 177) enters more fully into an explanation of the principle upon which all these cases rest. "The possession of land under a claim of right, in the absence of other proof, authorizes the presumption of a legal title. The presumption rests upon the ground that the true owner would not suffer another to enjoy his property without making any return, and certainly not in hostility to his title. If the occupant abandons the possession, or what is the same thing, suffers it to pass into the hands of a stranger, without any effort within a reasonable time to regain it or any excuse for the omission, the original presumption in favor of his title must give place to another presumption in favor of a better right in the new occupant."

The principle to be deduced from these cases is, that a plaintiff in ejectment cannot recover on a naked prior possession, unless the character and continuance of that possession is so far explained as to preclude the inference of an abandonment. To show a possession twenty or thirty years before that of defendant, without showing that any one has trespassed upon that possession, or, which is the same thing, without showing any connexion between his possession and that of any one who succeeded him in the possession, either as trespassers or holding by contract, does not bring the plaintiff within the benefit of the rule settled in Smith vs. Lorillard.

As the instruction given by the court was erroneous, we shall remand the case for a new trial.

The other Judges concurring, the judgment is reversed.