# Lewis *versus* Jones.

In leasing a farm for agricultural purposes, its cultivation according to the course of good husbandry is implied. An outgoing tenant has no right to remove from the land he occupied, manure made on the land, from its produce, during his occupancy; and the fact that he bought *some* hay and *some* grain, and fed the grain so bought to his horses, will not alter the case, so long as the manure so made is commingled with that made from the produce of the farm. Besides; the evidence of the quantity so purchased was too indefinite to refer to the jury to ascertain the quantity made from each description of produce.

Error to the Common Pleas of *Philadelphia county*.

This was an appeal from the judgment of an alderman, before whom Jones brought a suit against Lewis to recover damages for carrying off a quantity of manure from a piece of land containing above 20 acres, which had been leased by Jones to Lewis. The defendant kept cows; they were pastured on the place. There were a few acres for pasture and some for hay. It was testified by one witness that the defendant also purchased *some* hay. The defendant left the place on the first of April, but in the latter end of March he removed the manure which was in heaps in the barnyard. There were about thirty wagon-loads.

James Orr, another witness, testified that Lewis bought *some* hay. Witness did not know how much. He purchased grain to feed his cows and horses. He had eight or nine horses. He fed the horses on the grain that was bought. Another witness testified that he lived with Lewis in the fall of 1848. He testified that all of the hay and straw used were bought. The cows were dairy cows.

Parsons, J., charged the jury as follows:—

"If the jury believed the defendant was the tenant of the plaintiff, and he rented the land of him for farming purposes, and the manure was made upon the land *in the ordinary course of farming*, and was heaped up in the yard, and the defendant, about the time his lease was to expire, took the manure now the subject of controversy, and hauled it away without the consent of the plaintiff, when there was no authority given by the lease for him

[Lewis *v.* Jones.]

so to do, this action can be sustained, and the plaintiff will be entitled to recover the value of the manure that was in this manner taken and carried away. In the case of Barrington *v.* Justice, decided by this court in 1845, we held that manure made on a farm occupied by a tenant at will or for years, in the ordinary course of husbandry, consisting of the alluvials from the stables and barn-yard, or of compost formed by an admixture of those with soil or other substances, is by usage, practice, and the general understanding, so attached to and connected with the realty, that, in the absence of any express stipulation on the subject, an outgoing tenant has no right to remove the manure thus attached, or to sell it to be removed, and that removal is a tort for which the landlord may have redress; and we shall continue to hold this to be law until the court of last resort determine otherwise.

" This decision is based on the cases of Kitteridge *v.* Rhoads, 3 *N. H. Reports* 508; Fassit *v.* Reed, 6 *Greenlf. Reports* 222; Daniels *v.* Pond, 21 *Pickering* 369; Parsons *v.* Campbell, 11 *Com. Rep.* 525; Middlebrook *v.* Corwen, 15 *Wend.* 169. If, therefore, the jury should believe this defendant took the manure thus made, the present action can be sustained, and the plaintiff is entitled to a verdict for the value of the manure taken.

" The counsel for the defendant has submitted four distinct, separate points, on which we are asked to charge the jury. In our opinion they are all fully answered in our general charge above, within and fully given. But lest the counsel may think they ought to be answered *seriatim*, we will give a distinct reply.

" The defendant asks the court to charge the jury :—

" 1. That the plaintiff cannot maintain this action of trover and conversion, but should have brought an action on the case.

" 2. That if the form of action were right, he cannot sustain his claim, because the manure made on a farm belongs to the tenant and not to the landlord.

" 3. That whether the manure made on a farm belongs to the tenant or to the landlord is a question of law, instructions as to which the jury must take from the court.

" 4. That if the defendant spread upon the place or left behind him as much manure as the farm would reasonably produce, the excess belongs to him and not to the landlord.

" In answer to the first point, the court decline to answer it as prayed for, but say if the evidence is believed the action can be sustained.

" To the second point we say, this is fully and distinctly answered in our general charge.

" To the third point we reply, the jury should take the law from the court in this as in every other case, and they are to decide the

[*Lewis v.* Jones.]

facts as they think them applicable to the rule of law above stated in our charge.

"To the fourth point we say, that we believe all the principles of law answering in the case are clearly stated in our general charge. Nor is there any evidence how much manure was left on the farm, or in the yard, nor can we say whether there was any excess for the tenant; and, under the facts disclosed in the cause, refuse to give the instructions prayed for in this point."

The counsel for the defendant before verdict excepted to the charge of the court.

Error was assigned to the charge.

*A. H. Smith* for defendant in error.—That the tenant had no right to remove the manure. 6 *Greenleaf* 222, Lassell *v.* Read; 15 *Wendell* 169; 21 *Pickering* 367; 19 *Verm.* 379.

That trover would lie: 2 *Iredell* 326; 25 *Eng. Com. L. Rep.* 563; *Ch. Pl.* 150, 152; 15 *Mass.* 204; 14 *Pick.* 356.

The opinion of the Court was delivered January 23, by

LEWIS, J.—This case is characterized by a circumstance which, whenever it occurs, whether the result of intention or inadvertence, does injustice to the court below, and tends to mislead the tribunal of review in its final decision. Every assignment of error, in the record before us, consists of a *misstatement of fact* in relation to the charge of the court below. The record falsifies the allegations contained in the assignments of error, and we might, therefore, very properly affirm the judgment, because the instructions complained of were not in fact given.

But it appears by the record, that two questions of importance to the agricultural interests of the country have been decided by the Court of Common Pleas; and we therefore proceed to inquire whether any error has been committed in their solution.

The court instructed the jury that if they believed "that the defendant was the tenant of the plaintiff, and rented the land of him *for farming purposes,* and the manure was made upon the land in the ordinary course of farming, and was heaped up in the yard, and the defendant, about the time his lease was to expire, took the manure (now the subject of controversy) and hauled it away without the consent of the plaintiff, when there was no authority given by the lease for him to do so, this action can be sustained, and the plaintiff will be entitled to recover the value of the manure that was in this manner taken and carried away."

It is implied from the letting of a farm for agricultural purposes that the tenant will cultivate the land according to the rules of good husbandry. This is as much a part of the contract as that he shall deliver up possession at the end of the term, or that he

[Lewis *v.* Jones.]

shall do no waste.   If the manure which is made by the feeding and bedding of his stock on the premises, according to the usual course of husbandry, is to be disposed of and carried to another farm, it only creates a necessity for the purchase of other fertilizing materials, to keep the land in good order for the production of crops.   This must be done at expense of money in the purchase, and time and labor in hauling it from a distance.   If every tenant were to adopt the practice of selling the manure, much time and labor would be unnecessarily expended in transporting it from place to place; when, for all general purposes, the interests of landlord and tenant would be much better promoted by the application of the manure to the farm on which it was made.   But a large proportion of farms are owned by widows and orphan children, and are necessarily.in the occupancy of tenants from year to year.   These, which should be under the peculiar protection of the law, would be most exposed to impoverishment.

Tenants for short or uncertain periods, under the temptation of a rule of law which encourages bad husbandry, would be led into practices (each in self-protection), which no one would adopt with regard to his own land.  Such a tenant would feel no interest whatever in preserving the fertility of the soil for the benefit of those who might succeed him.   He would be prompted by the incentive of interest to strip the land of everything which the law permitted him to carry off.   The practice would become general, and the result would be that all the farms in the Commonwealth under cultivation by tenants for years, would be impoverished; the tenants themselves receiving no adequate remuneration for their labor, the landlords no rent for their farms.   It is manifest that such a course of husbandry would be injurious to the public interests, and ruinous alike to landlords and tenants.

The justice of this view of the question has been recognised by enlightened jurists in England and in other states of this Union.  Mr. Justice BULLER laid down the doctrine that " every tenant (where no particular agreement existed dispensing with these engagements) is bound to cultivate his farm in a husband-like manner, and to consume the produce on it.   This is one engagement that arises out of the letting, and which the tenant cannot dispense with, unless by special agreement."   This language of Mr. Justice BULLER was cited by Chief Justice GIBBS, in the case of Brown *v.* Crump, determined in 1815 : 1 *Marsh.* 567.

In Connecticut, it has been held that manure spread upon the land, or scattered about a barn-yard, cannot be taken away by the vendor : Parsons *v.* Camp, 11 *Conn.* 530.

In Massachusetts, Chief Justice SHAW, in delivering the opinion of the court, declared that " manure made on a farm, occupied by a tenant at will or for years in the ordinary course of husbandry, consisting of the collections from the stable and barn-yard, or of

[Lewis *v.* Jones.]

composts formed by an admixture of these with the soil, or other substances, is, by usage, practice, and the general understanding, so attached to and connected with the realty, that in the absence of any express stipulation on the subject, an outgoing tenant has no right to remove the manure thus collected, or to sell it to be removed; and that such removal is a tort for which the landlord may have redress." The tenant has a qualified possession of such manure for a special purpose only; that is, to be used upon the farm. The moment he sold it, the act was an abandonment of the special purpose, and it vested in the landlord as owner of the freehold, and the action of trespass lies for removing it:" Daniels *v.* Pond, 21 *Pick.* 371.

In the state of Maine, Chief Justice MELLEN declared that the claim of the tenant to remove the manure made upon the premises, "*even if made by his own cattle and with his own fodder*, had no foundation in justice or reason, and such a claim the laws of the land cannot sanction:" Lassell *v.* Reed, 6 *Greenleaf* 222.

In the state of New York, Chancellor Kent states that "the policy of encouraging and protecting agricultural improvements, will not permit the outgoing tenant to remove the manure which has accumulated upon a farm during the course of his term." 2 *Kent's Com.* 347. And Chief Justice NELSON, of the same state (now on the bench of the Supreme Court of the United States), after reviewing the authorities and examining the question upon principle, declares that where a farm is let for agricultural purposes (no custom or stipulation in the case), the manure does not belong to the tenant, but to the farm; and the tenant has no more right to dispose of it to others, or remove it himself from the premises, than he has to dispose of or remove a fixture." "If a farm be leased for agricultural purposes, good husbandry (which without any stipulation is implied by law), would undoubtedly require it to be left on the premises:" Middlebrook *v.* Corwen, 15 *Wend.* 171.

There are other authorities upon this question; but enough has been said to show that the charge of the court below was correct, so far as it relates to the manure made from the produce of the farm.

The doctrine that the manure goes with the land, is of course confined to farms which are let for agricultural purposes; and the case before us is one of that character, in which the manure was made from the produce of the farm.

One of the witnesses, however, testified that the tenant "bought *some hay*"—the witness did not know how much—"and *some grain* to feed his horses and cows. He fed the horses on the grain that was bought." Upon this evidence the court was requested to instruct the jury "that if the defendant spread upon the place, or left behind him, as much manure as the farm would reasonably

[Lewis *v.* Jones.]

produce itself, the excess belongs to him and not to the landlord." This instruction the court refused to give, because there was no evidence of the facts thus supposed to exist. In this the court was perfectly correct. Nothing can more justly impair confidence in the administration of justice, than the practice of encouraging, or even permitting, a jury to find facts of which there is no evidence. To ask a jury to separate the manure which was made on the premises, and to assign one portion to the tenant upon the ground that his horses and cows had eaten "*some hay*" and "*some grain*" not raised on the premises, without specifying how much of either, or showing how much of the grain, hay and straw, raised on the farm, had been supplied to them for litter and food, would be asking a verdict without evidence. "*Some*" is a term too uncertain in its signification to sustain a verdict for any definite amount. It may mean a single ounce, or ten thousand tons —a single quart, or twenty thousand bushels.

But where a farm is let for agricultural purposes, the tenant cannot justify the removal of any portion of the manure made on the premises, by occasionally employing his teams in business not connected with the cultivation of the soil, and supplying them in part with hay and grain purchased from others, so long as the manure thus made is commingled with that made from the produce of the farm. It is probable that in such a case, the land would lose as much during the absence of the teams on the road, as it would gain by the foreign admixture. Be that as it may, it is certain that the tenant, by his own act, has rendered it impossible to ascertain the extent of his rights. And the doctrine of *confusion* of goods properly applies to his claim. *Popham's Rep.* 38 *Pl.* 2. "If A. will wilfully intermix his corn or hay with that of B., so that it becomes impossible to distinguish what belonged to A. from what belonged to B., *the whole belongs to B.*:" 2 *Kent's Com.* 364.

It is ordered that the judgment of the court below be affirmed.

Judgment affirmed.