## OXLEY STAVE COMPANY *v.* STAGGS.

### Opinion delivered June 30, 1894.

1. *Replevin for logs—Evidence—Presumption of ownership.*

   In replevin for certain logs, it was proved that they were cut by defendants from wild and unoccupied land, which was known as plaintiff's land; that plaintiff had claimed the land for five or six years, and exercised acts of ownership over it by cutting timber. Defendants set up no title in themselves to the logs, but had recognized plaintiff's ownership by permitting plaintiff to brand them without objection, and by assisting plaintiff's agent to raft them to a town, where defendants seized them during the agent's absence. *Held* that the evidence made out a *prima facie* case of ownership in plaintiff.

2. *Instructions—Exception in gross.*

   An exception in gross to a number of instructions given is unavailable if any one of the instructions is correct.

Appeal from Clay Circuit Court, Western District.

JAMES E. RIDDICK, Judge.

#### STATEMENT BY THE COURT.

This was an action for replevin for sixty-eight gum logs. The suit was brought by appellant filing an affidavit in proper form before a justice of the peace. The case was tried, and appealed to the circuit court, and a verdict and judgment rendered there, from which this appeal is prosecuted.

The appellee filed no written pleading, in either the justice or the circuit court, setting up title to the logs. The proof on the part of the appellant was substantially as follows: The agent of the appellant, the Oxley Stave Company, whose business it was to look after and watch their timber land, came upon the logs in controversy, piled on the bank of Black river in Butler county, Mo. He took possession of the logs as the property of the Oxley Stave Company, and put their brand upon them.

At the time he took possession of them, there was no brand or other marks of ownership on them. He began rolling them into the river to raft them, when the defendants came and commenced to help. They all began rafting, and all went down the river on the raft together. When they reached the mill, near Corning, the defendants went into town. The appellant's agent tied up the raft, and when the defendants came back, and found the raft tied up, they took off appellant's rope, and tied the raft with their own rope, and told appellant's agent to keep off the raft, threatening to throw him into the river. Whereupon the agent sued out a writ of replevin for the Oxley Stave Company. The logs were cut by the defendants, and hauled to the river. They were cut from a tract of land, wild, unoccupied and unimproved. A witness, in the course of the examination, was asked if he knew what lands the logs were cut from, and who owned the logs, and he answered: "The logs were cut from the land I heretofore described, in secs. 22 and 34, and the logs belonged to the Oxley Stave Company." The answer as to the ownership was objected to, and, upon motion of appellee, was excluded from the jury, over the objection of appellant.

Another witness testified that he knew the logs in controversy were cut on lands known as the Oxley Stave Company's lands; that the lands from which the logs were cut had been claimed by the Oxley Stave Company, and had been understood to belong to that company for four or five years. He was present when the lands were run off by the surveyor. The lands, for several years, had been known as the Oxley Stave Company's land. The Oxley Stave Company had been making staves and getting timber, from time to time, on said lands for some four or five years. This witness knew that the logs were not cut from defendants' land. The court, over the objection of the appellant, excluded

the testimony of the witness that the land was known as the Oxley Stave Company's land, and the statement that "the Oxley Stave Company have been claiming the lands from which the logs were taken, and have been making staves and getting timber on said lands, for four or five years." Other witnesses made similar statements, which were excluded from the jury over appellant's objection. It was in evidence that one of the defendants said: "We cut the logs on land belonging to a firm in Illinois," (all but twelve or fifteen). "The Oxley Stave Company have claimed to own the land for about six years."

The appellees introduced no proof. There was other testimony, but it is unnecessary to set it out in order to understand the decision of the court.

*D. Hopson* and *J. Perry Johnson* for appellant.

1. Defendants stood mute, and the burden was on plaintiffs to make out only a *prima facie* case. The possession by plaintiff is presumed lawful until the contrary appears. 38 Ark. 413 ; 11 *id.* 279 ; 47 *id.* 378.

2. The evidence excluded tended to prove ownership of the logs. Possession of personal property is *prima facie* evidence of ownership, and that the possession is rightful. 3 Mo. App. 116 ; 81 Mo. 375 ; 83 *id.* 430.

3. Even a void deed may give color of title, and be used to explain and define possession. 40 Ark. 237 ; 29 *id.* 248 ; 30 *id.* 110. Proof of possession of real estate is *prima facie* evidence of title. 10 Johns. (N. Y.) 328 ; 5 Cow. (N. Y.) 200 ; 71 N. Y. 85 ; 56 N. Y. 175 ; 51 Mo. 221 ; 56 *id.* 177 ; 55 *id.* 500. Open and notorious acts of possession are evidence of claim of ownership. 21 Ark. 9.

*G. B. Oliver* for appellees.

1. The court properly excluded parol evidence as to whom the lands *belonged*. Title to land cannot be proved in this way.

2. No evidence to show *occupancy* of the lands was offered. The lands were wild and *unoccupied*. Testimony as to *mere* trespasses is not competent to prove title.

3. The cases cited do not sustain appellant's contention that it had possession, that appellees took the logs by force, and that this made a *prima facie* case. 38 Ark. 413.

4. Appellees had position *first*. In replevin, where the title, rather than the possession, is in question, plaintiff must recover on the strength of his own title. He must show title in himself, and defendant can defeat him by showing he has no title, or by showing title in some third person. Gr. Ev. 559, *n. a.*; 20 A. & E. Enc. Law, 1056, and notes.

WOOD, J., (after stating the facts). It was error to exclude the testimony of the witnesses to the effect "that appellants had been making staves and getting timber off the lands from which the logs in controversy were cut, and that they had claimed to own the same for the last five years, and that it was known as the Oxley Stave Company's land." The defendants stand mute, and put the appellant to the test of its right to recover the possession upon the strength of its own title. They set up no affirmative title in themselves. Under this state of case, it devolves upon the appellant to show only a *prima facie* right to the possession. Has it done this? The proof shows that one of the appellees admitted that most of the logs in controversy were not cut on lands belonging to them, and that they knew that the lands from which these logs were taken had been claimed by the Oxley Stave Company for six years. With this knowledge, they permit the agent of the appellant company to take charge of the logs in controversy, as the property of the company, to put the brand of the company upon them, and, without objection, to roll them into the river, and to raft them to Corning. On the

contrary, instead of objecting, assisting one who had peacefully and lawfully taken possession of the property under a claim of ownership to raft it down the river. Then, in the absence of the one who had thus taken possession, but was still evidencing his claim of ownership, they proceed forcibly to take the possession, and threaten even a breach of the peace, and personal violence, in its retention. The conduct of appellees does not present them in any favorable attitude before this court. The testimony of Barnett tends to show that they are self-confessed trespassers upon some one's lands—one of them said the lands of a firm in Illinois, but that "the Oxley Stave Company had claimed them for six years." It was the duty of the appellees, when the agent of appellant first took charge of these logs, and branded them, and began to roll them in the river, to speak out and assert their rights then, if they had any. This would have been the ordinary and natural course of human conduct, especially of those who knew or believed themselves the *bona fide* owners of property. Failing to do so, their conduct was tantamount to an admission of the rights of appellant to the possession of the property. The proof by several witnesses that the land was known as the appellant's land, that it claimed it, and had exercised acts of ownership, such as cutting timber, making staves, etc., for five or six years, would tend to show that appellant itself was not a trespasser, but had the right to the timber of the land.

1. Evidence held to be presumptive of ownership.

If the appellant, as this proof tended to show, was or had been in the possession of this land for five or six years, for the purpose of cutting timber, and claiming the land as its own, the presumption would be that it was the true owner, until the contrary was shown. *Barry* v. *Otto*, 56 Mo. 177; *Smith* v. *Lorillard*, 10 Johns. 356; *Crockett* v. *Morrison*, 11 Mo. 3; *Dale* v. *Faivre*, 43 Mo. 556. Certainly these facts, taken in connection

with appellees' own conduct, were sufficient to make a *prima facie* case of appellant's ownership and right to the possession of the logs in controversy.

The objection to the instructions given was in gross, and we have only considered them to the extent of ascertaining that some one them is correct, which we find to be the case.

*2. Exception in gross to several instructions.*

For the error indicated the judgment is reversed, and cause remanded for new trial.

Riddick, J., was disqualified.