In the Matter of the Accounting of CITY NATIONAL BANK OF BINGHAMTON et al., as Executors of WILLIS S. KILMER, Deceased.

Surrogate's Court, Broome County, April 2, 1946.

*Thomas B. Kattell* for petitioners.

*G. Mead Willsey* for Sarah J. E. W. Kilmer, respondent.

*Francis C. Palmer* for George M. Ely, executor.

*Wallace H. Sidney* for certain respondents, as special guardian of certain infant respondents and, by appointment, for certain respondents now in military service.

*Charles W. Turner* for certain respondents, as special guardian of certain infant respondents and, by appointment, for certain respondents now in military service.

*Charles P. Brink* and *Robert O. Brink* for certain respondents

*Eugene P. Lynch* for certain respondents.

*H. W. Van Ness* and *Harry L. Russell* for certain respondents.

*Robert La Mont* and *William H. Golding* for certain respondents.

*Milo R. Kniffen* for certain respondents, and as special guardian of Phyllis Kilmer, an infant.

*F. Walter Bliss* for certain respondents, and, by appointment, for certain respondents now in military service.

*Arthur J. Ruland* and *Robert E. Dempsey* for certain respondents.

*Arthur J. Ruland* for certain respondents, as special guardian of certain infant respondents and, by appointment, for David Gardner, respondent, now in military service.

*Edmund J. O'Connor* and *Charles R. Stewart* for Hattie M. K. Cannon, individually and as committee of the person of S. Andral K. Cannon, an incompetent person, and another, respondents, and as special guardian of said incompetent person.

*Sanders and Shandalow* for certain respondents.

*Robert J. Ryan* for Emily M. Bunnell, respondent.

*Rexford W. Titus* for Ethel C. Hadsell, as executrix of Jerome B. Hadsell, deceased, executor.

*Stanley B. Johnson* for Viana G. Snyder, respondent.

*William Scott, 2d.,* for Marietta McKinstry.

*James L. Gage* for certain respondents.

*Bernard H. Chernin,* as special guardian of all infant respondents not otherwise represented, for all unknown respondents, and for persons not in being.

*Edward F. Ronan,* by appointment, for respondents now in military service not otherwise represented.

PAGE, S. Willis Sharpe Kilmer died a resident of Broome County, New York, on July 12, 1940, testate, and leaving a gross estate of about $7,000,000. The executors of his will are the City National Bank of Binghamton, Jerome B. Hadsell (since deceased), George M. Ely and Alexander M. Robb. This is a proceeding brought for an accounting by said executors, instituted for the purpose of winding up their affairs as such and taking over as trustees in accordance with provisions of the will. The sole question involved in the present determination is in relation to a sale by said executors of premises of which said testator died seized, known and designated as No. 81 Court Street, Binghamton, New York, the same consisting of a business block located on one of the principal commercial streets of the City of Binghamton.

In 1941 the executors were obliged to raise necessary funds for payment of Federal and State estate taxes amounting to about one half of the gross estate. By provision in the will, the testator's widow was given power to designate to the executors which assets should be retained to become eventually corpus of a trust for her benefit. Pursuant to the widow's wishes as to retention of assets, the executors, having the requisite power to do so accorded them by the will, determined to sell No. 81 Court Street for the purpose of raising funds for the payment of taxes.

They had appraisals made of the property in question, following which they received several offers for the sale thereof. Both said appraisals and all offers were substantially less than $116,000, except one offer of said amount received from Mr. Maurice Cohen.

All the executors, other than George M. Ely, desired to accept the offer of Mr. Cohen, but Mr. Ely expressed the opinion that he might be able to obtain a higher offer from some other prospect which he had in view. Because of this situation the executors, other than Mr. Ely, obtained from him a guaranty of a sale price equal to the Cohen offer, reduced to writing as follows:

" WHEREAS, the Executors of the estate of Willis Sharpe Kilmer, deceased, have recently received and have a bona fide offer from one Maurice S. Cohen of $116,000.00 net (i.e., any commission to be paid by said Cohen) for premises known as 81 Court Street, which offer may be withdrawn if not accepted promptly, and

" WHEREAS, George M. Ely desires to negotiate with F. W. Woolworth Company for the sale of said premises to it at a higher price, it is, THEREFORE,

" AGREED by said George M. Ely that if the negotiations with F. W. Woolworth Company do not result in a sale at a price at least equal to that of said Cohen, and if said offer of said Cohen is withdrawn and no sale to him is consummated, said Ely will pay said estate said sum of $116,000.00 and accept a conveyance of said property.

" Dated March 7, 1941.                     Geo. M. Ely "

Later it turned out that no better offer than Cohen's was received and the Cohen offer was withdrawn. Pursuant to the guaranty obtained by the other executors from Mr. Ely, the premises in question were conveyed to the latter and receipt of the purchase price therefor acknowledged by all the executors by an instrument introduced in evidence herein and reading as follows:

" The undersigned Executors of the estate of Willis Sharpe Kilmer acknowledge that they have received from George M. Ely individually the sum of $116,000.00, purchase price of premises known as 81 Court Street, Binghamton, N. Y., in full payment, satisfaction and discharge of his agreement and guaranty dated March 7, 1941.

" Dated June 3rd, 1941."               (Signed by all executors.)

In this accounting proceeding, because of will provisions as to trust remainders, it was necessary to cite all kin of testator within the sixth degree, thereby causing the total number of respondents to comprise a large number of persons. Some of these respondents are infants. Others are absentees in the military service of the United States. Provision for represen-

tation of all respondents *non sui juris* has been duly made. Also, attorneys have been duly appointed by the court to represent respondents who are absentees in the military service. Complicated objections to the account have been filed by various respondents, among which are objections to the sale of 81 Court Street by the executors to one of their own number.

It is conceded by the executors that the ancient principle of absolute prohibition of a representative's dealing with himself in relation to property as to which he stands in a fiduciary relationship is strongly established. However, they contend that the present situation is distinguishable from those presented in the long line of cases supporting that principle.

The reasons urged as a basis for distinguishment are: that the price paid by the executor in this case represented the full fair market value of the property as of 1941; that the sale was brought about in the exercise of absolute good faith and pursuant to a diligent effort on the part of the executors to realize the best price obtainable; that the lapse of several years since the sale was made should be taken into consideration, together with the fact that testator's widow and the primary beneficiary of the will in question not only does not object to the sale but has, in her answer herein, asked this court for its affirmance. A special consideration urged is that the conveyance to executor Ely was made pursuant to a guaranty which the other executors had exacted from him in order to safeguard the advantage to the estate represented by the most favorable offer that had been received.

I have no doubt of the absence of any ulterior motive on the part of any of the executors and believe that the sale was consummated at a fair price under 1941 conditions and in good faith on the part of all of them, and so find, but there still remains the question as to whether the composite effect of all the circumstances and considerations involved can be regarded as sufficient to validate the conveyance. The resolution of this question depends upon a proper application of the principle based on public policy and established by the long line of cases concerned with the personal dealings by an executor or other fiduciary with assets of an estate or corpus in his charge, singly or with others.

Considerable abbreviation can be accomplished by refraining from voluminous quotations from legal authorities. One of the most scholarly treatises of the law of trusts is the work of Dean Bogert. For a crystallization of authorities on the subject of a fiduciary's taking any action whereby he becomes

personally interested in any asset of an estate or trust represented by him, see Bogert on Trusts (Vol. 3, § 484). The author's commentary on this situation shows how impenetrable is the solid front against allowing a fiduciary any injection of his private interest into the administration of his trust which has been implacably maintained by all English-speaking jurisdictions since the earliest development of an identifiable law of fiduciaries. An implementation for sustaining this principle is granting to the party to whom the fiduciary duty is owed an approximately unqualified option to avoid any transfer by the fiduciary to himself. (See, also, 2 Scott on Trusts, §§ 170–170.3, 170.7; also 1 Restatement, Trusts, § 170.)

Selecting a few New York cases wherein the principle is maintained and courts have refused to be beguiled by special circumstances involving various persuasive considerations, tending to rationalize exceptions to the general rule, some of these cases are: *Davoue* v. *Fanning* (2 Johns. Ch. 252, 260–261 [1816]). In the opinion in this case by Chancellor KENT, he says: "However innocent the purchase may be in the given case, it is *poisonous in its consequences*. The *cestui que trust* is not bound to prove, nor is the Court bound to judge, that the trustee has made a bargain advantageous to himself. The fact may be so, and yet the party not have it in his power, distinctly and clearly, to show it. There may be fraud, as Lord HARDWICKE observed, and the party not able to prove it. It is to guard against this uncertainty and *hazard* of abuse, and to remove the trustee from temptation, that the rule does and will permit the *cestui que trust* to come, at his own option, and without showing actual injury, and insist upon having the experiment of another sale."

*Wendt* v. *Fischer* (243 N. Y. 439, 444 [1926]), where the court, by Judge CARDOZO, quoting from the earlier case of *Munson* v. *S., G. & C. R. R. Co.* (103 N. Y. 58, 74) says: "The law ' does not stop to inquire whether the contract or transaction was fair or unfair. It stops the inquiry when the relation is disclosed, and sets aside the transaction or refuses to enforce it, at the instance of the party whom the fiduciary undertook to represent, without undertaking to deal with the question of abstract justice in the particular case ' * * *."

*Meinhard* v. *Salmon* (249 N. Y. 458, 464 [1928]) where the court, by Judge CARDOZO, says: "As to this there has developed a tradition that is unbending and inveterate. Uncompromising rigidity has been the attitude of courts of equity when petitioned

to undermine the rule of undivided loyalty by the ' disintegrating erosion ' of particular exceptions  \* \* \*."

*Matter of Fulton* (253 App. Div. 494, 495–496 [1938]), in which the opinion was written by Mr. Justice BLISS, contains a statement bearing on this general subject as follows: " While it may not actually have been a fraudulent transaction, only the fullest and fairest disclosure of all the facts will establish that. A conflict of interests exists. The mere showing of the relationship raises the presumption and gives the beneficiary of the trust the right to have the transfer set aside. The courts have said that this was to avoid the opportunity for actual fraud and its easy concealment by a trustee and that such sales should be avoided as a matter of public policy. In principle, such a transfer is constructively fraudulent and may be canceled at the beneficiary's option."

Cases cited by petitioners are: *Matter of Segal* (170 Misc. 673) and *Corbin* v. *Baker* (167 N. Y. 128). But I cannot see that either of these precedents can be regarded as having any bearing on the present situation.

In the *Segal* case (*supra*), the question of the right of a *cestui que trust* to *avoid* a sale was not involved. There it was a question of a fiduciary's liability to pay the alleged difference between the fair market price and the actual price paid by him Of course, in a claim based on this theory, it was very material to determine whether the defendant had purchased the property at a consideration less than its fair market value at the time of the sale.

In the case of *Corbin* v. *Baker* (*supra*, p. 134), a partition action, a statement is made to the effect that, " power resides in the court to relieve from the rule." A careful study of this case, however, shows that what the court meant by this was either: (1) Authorization in advance of the proposed sale, after hearing all interested parties (as would be the case under Surrogate's Ct. Act, § 215), or (2) a judicial sale, requisite jurisdiction of the *res* and all necessary parties having been acquired, in an action or proceeding under the supervision and direction of the court throughout its entire course.

The clear policy established with practical unanimity is against permitting *any* injection, under *any* circumstances, of a trustee's own private interest into the management of the estate in his charge as a fiduciary, Countenancing anything of this kind is regarded as dangerous, so much so that the rule is to never permit it at all, except by beneficiaries' free assent or court adjudication, even in a case where there may be some

definitely persuasive special circumstance which is urged as distinguishing it from others.

In view of the authorities, the fairness or unfairness of the present transaction is completely immaterial and not a question to be considered by this court. Among the authorities so holding in effect, there were various special circumstances which were urged as a basis for making individual exceptions to the general rule.

It may be that none of these authorities have the exact basis urged in the present case, viz., a guaranty by one of several executors given for the purpose of protecting the estate in relation to a favorable previous offer. But to regard this as a proper basis of distinguishment would be running counter to the authorities dealing with other contended bases for making exceptions, some of which have appeared to be fully as strong as that presented in the present case.

As previously observed, one of the contentions of the executors in the instant case is that the lapse of time since 1941 should be taken into consideration. The executors gave as one of the reasons in support of their action that they were required to act quickly in order to preserve the advantage to the estate of the Cohen offer of $116,000. This was one of the reasons why they did not proceed under section 215 of the Surrogate's Court Act for the purpose of seeking to validate the proposed conveyance to Mr. Ely at a price equal to the Cohen offer. Another reason for by-passing this procedure was that, in 1941, the executors had not yet been able to ascertain all of respondents to be cited in the present proceeding. The implication is that, while they were endeavoring to do this, the advantage of the Cohen offer would have been lost.

In view of the equitable nature of the principle governing the present situation, it is necessary to consider whether or not objecting respondents in the present case can be charged with conduct of any nature which might constitute an estoppel to their enforcing their objection to validation of the conveyance in question. Is there any proper basis for holding that the present objecting respondents are estopped to assert an unqualified right to have this conveyance set aside?

The sale to executor Ely is not void, but only voidable. It is voidable only on the election of objecting respondents. It would not be voidable, even then, provided the latter, being *sui juris,* had expressly or tacitly acquiesced in or consented to the conveyance at the time it was made or thereafter ratified it. Neither would the sale be voidable if objecting respondents

were guilty of laches, or there being some other circumstance making it now inequitable to permit them to assert an election on their part to have the sale avoided.

It was not until the institution of the present proceeding in 1945 that respondents who now challenge the legality of the sale to Mr. Ely were cited herein and thereby, for the first time, became aware that they have or might have some future interest in the estate. There is no claim that objecting respondents ever consented to or acquiesced in the sale. This is the earliest reasonable opportunity they have had to assert their option and, therefore, there is no proper basis of laches.

Moreover, the fact that some of the respondents, notably the testator's widow and chief immediate beneficiary of his will, do not object to this conveyance, cannot be regarded as a circumstance binding upon those of respondents who do object. It is their prerogative, as parties to the proceeding who have consented to, or done nothing, or acquiesced in the doing of anything to the contrary. Along with this, there is the consideration that the objection to this conveyance is supported by special guardians for respondents *non sui juris,* as well as by attorneys appointed by the court to represent persons *sui juris* but absentees in the military service of the United States.

It seems clearly apparent that proper consideration of the public policy involved in the present situation is no less strong in this instance than those in which it has been previously so tenaciously upheld. A determination upholding the validity of this sale would be a very bad precedent. It might well practically provide a blueprint to be followed by some fiduciary of a character less reputable than is true of the present petitioners, a practicable plan to circumvent the long established prohibition of a sale of an estate asset by a fiduciary to himself or by a group of them to one of their number.

A confirmation of the sale here in question would, unquestionably, be an unique instance of expressly authorizing a comingling of private interest and duty as a fiduciary. It is enough to forestall such a result that these might be in conflict in some degree, however slight. Aside from original consent of the beneficiaries or court approval in advance, the possibility that the trustee might make a profit from dealing in an estate asset is prohibited.

Certainty in the law is one of its most valuable qualities. This is not the first case where it has become necessary to weigh some possible hardship or inconvenience to a particular party against the public interest which is certainty in the law.

Applied to the present situation, this means that fiduciaries in a position identical with or similar to the one here presented may not, even with the best of intentions, be permitted to run counter to the settled public policy as enunciated in the above-cited and practically all other legal authorities bearing on the present question and circumvent the result that the law prescribes, simply by a showing of some incident or circumstance somewhat different from other cases where the principle has been sustained. Whenever a " law " is simultaneously settled, certain, in accord with the concept of justice and productive of an effect in the public interest in practically all cases, danger of " ' disintegrating erosion ' of particular exceptions " must be averted.

It follows that respondents' objections to the transaction here at issue must be sustained.

Settle order on notice in accordance with this decision.