MARGARET P. MAYER, Appellant, *v.* LEWIS CRANDALL et al., Respondents.

Third Department, May 11, 1955.

*John S. Hall* and *George M. Gunderson* for appellant.

*Albert Beswick* for respondents.

BERGAN, J. Plaintiff Margaret Peck Mayer was the sole distributee under the will of her father and she was also appointed and qualified as administratrix of his estate with will annexed. He died possessed of a parcel of real property in Warrensburg and thus plaintiff became vested with title to that property on his death by virtue of the will and had acquired the right to sell it as owner. For reasons that will be discussed in due course, she also would have the power to sell it under certain circumstances in the exercise of her office as administratrix.

The will was admitted to probate in Warren County on May 4, 1943. Mrs. Mayer at this time lived in California and her lawyer prepared and sent her for execution a power of attorney, the language and effect of which lie at the core of this controversy. This instrument described Mrs. Mayer as "Administratrix C. T. A. of the estate of P. Judson Peck late of Warrensburg". It appointed her lawyer as attorney "for me". It authorized him "in my name" and "place and stead" to sell "any property" that "may belong to the estate of P. Judson Peck" and to apply the proceeds of the payment to the obligations of the estate.

In the usual sweeping language of such instruments it authorized the appointee to do "all and every act and thing whatsoever requisite and necessary to be done in and about the premises, as fully * * * as I might or could do * * * hereby ratifying and confirming all that * * * [he] shall lawfully do or cause to be done by virtue hereof." The instrument was signed and sealed by plaintiff in her individual name and not as administratrix; and the acknowledgement executed in California is an individual acknowledgement.

The attorney acting under this instrument in the name of Mrs. Mayer gave a deed to the defendants on July 1, 1943, which was not recorded until three years later. The attorney who had executed the deed made no accounting to plaintiff for the proceeds which he had received on the sale of the property. We are not concerned here, however, with an account between the plaintiff and her appointed attorney, but primarily with the question whether the power of attorney executed by plaintiff was sufficient in form to authorize a conveyance of a good title to the real property.

Nine years after the execution of the power of attorney and the deed and about six years after the deed was recorded, plaintiff instituted this action in ejectment for the recovery of the possession of the real property. The complaint contains the naked allegation that plaintiff " is the owner in fee and entitled to the immediate possession of " the property; that the defendants are in actual possession thereof; and that since the date of the execution of the deed in 1943 defendants have unlawfully " withheld " the " possession " of the property " from " the plaintiff.

The answer is a mere general denial and puts no reliance on estoppel or any other equitable reason why possession should not be awarded to plaintiff; but upon the trial it was shown that plaintiff paid no taxes and that defendants on the other hand regularly paid the taxes, paid off a mortgage on the premises, and expended substantial sums for the improvement of the property. The Official Referee granted judgment for the defendants after a trial.

The controversy as it reaches us on appeal centers itself largely on a construction of the language of the instrument granting the power of attorney and whether it is, as defendants argue, or is not, as plaintiff argues, sufficient to transmit to the attorney a power to transfer by deed the title which plaintiff then had as personal owner of the land. A fair case can be made out both ways; from the words intrinsic to the instrument and from the authorities on the subject which have been cited.

Sometimes words in an instrument describing an office occupied by a party such as " Margaret Peck Mayer, Administratrix C. T. A. of the estate of P. Judson Peck " have been regarded as merely descriptive of the person and not to affect adversely rights of the person as an individual thus described. In *Litchfield* v. *Flint* (104 N. Y. 543) a note was made payable to " E. B. Litchfield, ' executor of the estate of H. Maria Litchfield, deceased ' " but the court was of opinion (p. 550) that the payee

individually was entitled to maintain the action and the words were merely descriptive of him.

Whether this would be so depends in some measure on the course of dealings and the relations between the parties and the language of the instrument itself. That the act is an individual and not in an official capacity may, of course, be asserted against, as well as in favor of, a party thus described. To say all this is to say that the treatment of the descriptive words depends on varying circumstances, which may often, as in *Whitford* v. *Laidler* (94 N. Y. 145) suggest that a representative, rather than an individual, act was intended.

There defendants were officers of an agricultural club regarded as a *de facto* corporation and signed a lease renting a fairground. Their signatures and seals were at the end of the instrument without adding after their signatures their titles in the club. The body of the instrument made it rather clear, in the view of the court, that they were acting not individually but for the club, both by the use of the term " as president ", etc., of the club and by use of the phrase stating they bound themselves " and their successors in office " to pay the rent (p. 148). The court was of opinion this was not their individual contract (p. 149) but the contract of the club.

In *Courts* v. *Golden* (257 App. Div. 31), it was similarly held by the court, upon examination of the instrument, that the instrument had been executed on behalf of the estate, notwithstanding it was signed by the executor without adding his title to his signature. We do not regard *Myers* v. *Mutual Life Ins. Co. of N. Y.* (99 N. Y. 1) where a second instrument clarified the capacity in which the first one was executed, and placed beyond all doubt the nature of the authority given, as helpful to the solution of the problem before us.

The failure to add the title after the signature under seal, and the acknowledgement in individual form, while together not conclusive on the individual nature of the power granted, may at least be taken as some indication of the exercise of individual power. It was usual at common law to imply an individual responsibility from an individual signature under seal, a subject which Chief Judge RUGER discussed in *Whitford* v. *Laidler* (*supra*, pp. 149–150).

To avoid this result it would usually be necessary that it appear quite conclusively from the contextual language of the instrument that the signatory was acting in a representative capacity. We construe the instrument before us as being ambiguous enough, and sufficiently open to varying interpreta-

tions of intent, to permit the court to hold that the execution in this ambiguous form over the individual signature of plaintiff be regarded as the individual act of the plaintiff.

The descriptive text following the recital of plaintiff's name in the instrument was not " as administratrix of ", but merely " administratrix of "; and the authority of the attorney to act " for me " and in " my name " without there stating " as administratrix " could suggest an individual delegation rather than delegation of the authority of the administrative office.

The words " any property " that " may belong to the estate of " the decedent and the direction that the proceeds be applied to the debts of the decedent are open to a construction that plaintiff was acting in a representative capacity and did not intend to delegate a power to sell real estate which had become vested in her; but in a broad sense the real estate which had passed by the will to the plaintiff from her father's estate was property that had belonged to his estate and " that may belong to " is descriptive of that property; and the real estate would, of course, be subject to his debts under certain conditions. Our construction of the instrument leads us to think it is ambiguous.

Furthermore, the construction, if doubtful, should be resolved against a party who executed and transmitted the instrument to her own appointee for action. She is now asserting, against parties who paid her appointee good consideration and took his deed, a right to disavow on very narrow ground, what her attorney did with her property in her name. Thus we think that on the issue of construction of the instrument, the view of the Judge who heard the case and granted judgment for the defendants is not so unreasonable in resolving an issue of construction of a fairly debatable instrument as to require reversal of the judgment.

We think there are additional reasons leading to affirmance which have not been examined in the briefs. There can be no doubt that this instrument, on behalf of the plaintiff in some capacity, gave to the attorney a power to convey real estate; and if the delegation of power was not the personal act of plaintiff, it was, at least, as she concedes on appeal, her act as administratrix.

In that capacity, too, we think she had a sufficient right to sell the land and her agent acquired a right to sell it for her that as to these defendants she is not able to disavow. There can be little doubt that the words " any property " include real estate as well as personalty (General Construction Law, § 38; *Mason* v. *Hackett*, 35 Hun 238, 240).

At common law an administratrix had no right whatever to sell real estate, and for a very long time in New York the authority to sell it stemmed directly, and only, from judicial sanction. But in 1929, section 13 of the Decedent Estate Law was amended (L. 1929, ch. 229) to grant directly to executors and administrators power to sell real property notwithstanding an absence of a valid power granted in a will. Under some circumstances, but not all, the exercise of this power required approval of the Surrogate, and its valid exercise by this plaintiff, as the statute read before 1947, would have required such judicial approval. (See, by way of comparison, the elimination of this restriction in 1947 and the discussion in *Matter of Siegel,* 191 Misc. 323.)

But there is a difference in quality between an act which cannot be performed at all and an act which is authorized, but which requires judicial approval. Sometimes the latter may be deemed valid or become validated even if prior approval had not been obtained. It has been said by way of comparison, that sales of property by executors falling within certain prohibitions of a long public policy are voidable and not void (*Matter of Kilmer,* 187 Misc. 121; see, also, *Matter of Fagan,* 166 App. Div. 244).

It is commonly held, for example, that an heir may ratify an unauthorized sale by an executor under circumstances which would in the first place have required judicial authority. (33 C. J. S., Executors & Administrators, § 273): " An unauthorized sale of real estate * * * is binding on the heirs or devisees if it is ratified by them ". Had this plaintiff, who had the legal title to the land, sold it as administratrix, she could scarcely argue later in her capacity as owner of the fee, that as administratrix she had no power to sell. Ratification would be inherent in her own official act and there would be an effective merger of her power as owner and administratrix.

From this we turn to look at the status of defendants as purchasers on the strength of plaintiff's power of attorney. Assuming that the legal title to the land still rests with plaintiff, because of a defect in the legal authority of the plaintiff to sell in her capacity as administratrix without the approval of the Surrogate, still she would be deemed to hold the legal title as a trustee of the equitable rights of the defendants acquired under an imperfect legal authority to sell without prior judicial approval.

Thus where only one of two coexecutors having a power to sell real estate joined in a deed, although the statute required in

those circumstances that they unite in its execution, with the result there was a defect of conformity to the statute in the transfer, nevertheless it was said that even if legal title had not passed, the heirs were deemed the "trustees of the legal title" for the benefit of the purchaser. (*Brown* v. *Doherty,* 185 N. Y. 383, 390; see, also, *Brown* v. *Crabb,* 156 N. Y. 447.) Even where the sale by the administrator is void because of lack of authority, a purchaser put in possession by the administrator is not commonly regarded as a trespasser (33 C. J. S., Executors & Administrators, § 271).

At common law the passing of a long period of time without the assertion of any right to possession by a legal owner could be treated by the triers of the fact in an action for ejectment as an abandonment of the right to possession (*Whitney* v. *Wright,* 15 Wend. 171). Even without asserting the principle of estoppel which, if pleaded, would almost certainly be applicable to a case like this where the complaint shows possession by defendants for nine years without the institution of an action by plaintiff or other assertion of right, and during which time improvements large in proportion to the value of the land were made, some such principle as that considered in *Whitney* v. *Wright* should be applicable.

The judgment should be affirmed, with costs.

FOSTER, P. J., COON, HALPERN and IMRIE, JJ., concur.

Judgment affirmed, with costs.