Vito J. Titone, J.
All parties have moved for summary judgment in this action to determine a claim to real property. The legal question raised appears to be one of first impression.
Lillie A. Dinger died December 7, 1954 survived by two daughters, Dorothy Dinger Cortelyou (whose husband is the plaintiff herein) and Alwina E. Dinger, one of the defendants. The last will and testament of Lillie A. Dinger left the real property which is the subject of the action to her daughters “ share and share alike ” (Dinger Will, art. third). The parties agree that the will created a tenancy in common in the daughters (EPTL 6-2.2, subd. [a], formerly Beal Property Law, §66).
On November 19, 1955, Dorothy Dinger Cortelyou, as executrix of her mother’s will, signed two executors’ deeds conveying the lands to her sister and herself as joint tenants. The deeds provide that they are: “Between dorothy dinger cortelyou, as executrix under the Last Will and Testament of lillie a. dinger, deceased,. . . party of the first part, and dorothy dinger cortelyou.....and alwina evelyn dinger. . . . as joint tenants with all incidents of survivorship and not as tenants in common, parties of the second part.....”. The deeds continue: “ witnesseth, that the party of the first part, by virtue of the power and authority to her given in and by said last will and testa *1009 ment, and in compliance with the terms thereof and the mutual agreement of the grantees herein. . . the description of the parcels follows:
The deeds also contain the following: 11 Together with the appurtenances, and also all the estate which the said testatrix had at the time of her decease in said premises, and also the estate therein, which the party of the first part has. . . . power to convey or dispose of, whether individually, or by virtue of said will or otherwise”. The deeds are signed by Dorothy Dinger Cortelyou (but not by Alwina E. Dinger), and under Mrs. Cortelyou’s signature is typed: ‘‘ Dorothy dinger cortblyott, as Executrix under the Last Will and Testament of lildie a. dinger, Deceased ”. These instruments were subsequently recorded and delivered by Mrs. 'Cortelyou to her sister.
Dorothy Dinger Cortelyou died intestate on May 15, 1968 survived by her husband. On October 11, 1968 Alwina E. Dinger conveyed part of the land to Headley and 'Cohn, the other named defendants. Several months later this action was commenced by the plaintiff, David H. Cortelyou, Jr., who asserts that he owns an individed one-half interest in all the property as his wife’s sole distributee, based on his contention that her ownership as a tenant in common with Alwina E. Dinger was unaffected by the executor’s deeds and that her interest, therefore, passed to him. The defendants assert that the deeds created a joint tenancy as to Dorothy Dinger Cortelyou’s interest held by her sister, Alwina, and herself, which passed to Alwina as the surviving joint tenant.
The plaintiff points out that Mrs. Cortelyou had no power as executrix to change the tenancy in common to a joint tenancy, relying on section 13 of the Decedent Estate Law. This statute permitted executors to ‘1 sell, mortgage and lease, all of the real property * * * ■ owned by the decedent at the time of his death ’ ’. The transfer was not a mortgage or a lease nor was it a sale, since no money was paid. The plaintiff thus concludes that the deeds were invalid and that Mrs. Cortelyou conveyed nothing, either in her fiduciary or her individual capacity.
The court' disagrees and holds that at the very least the deeds effectively transferred Dorothy Dinger Cortelyou’s individual one-half interest to her sister and herself as joint tenants. This conclusion is based on sections 240-b, 245 and 256 of the Beal Property Law and the applicable cases.
Section 240-b provides at subdivision 1:
“ Any person or persons owning real property or an interest in real property which he or they have power to convey, may *1010 effectively convey such property or interest by a conveyance naming himself or themselves and another person or persons, or one or more of themselves and another person or other persons, as grantees, and the conveyance has the same effect as to whether it creates an estate in severalty, a joint tenancy, or a tenancy by the entirety, or tenancy in common, as if it were a conveyance from a stranger who owned the property or interest to the persons named as grantees in the conveyance.”
The plaintiff alleges at page 10 of his main brief that Mrs. Cortelyou did not have the power to convey title without the consent of her cotenant, who did not sign the deeds, citing Lee v. Wiegand (28 A D 2d 560 [1967]). This is not the law and that case, if anything, reaches the opposite conclusion. In any event, the law is set forth in Warren’s Weed New York Real Property, Vol. 5A, Tenancy in Common, § 7.04):
‘ ‘ A tenant in common, although owner of an undivided share only in the land, differs from a joint tenant in having a several and distinct estate therein. And, except for the fact that he has not the exclusive possession, he has the same rights in respect to his share as a tenant in severalty. Each tenant in common holds his title and interest independently of the other tenants in common. Thus, a tenant in common may transfer, devise, convey, lease, mortgage or otherwise incumber his interest in the land without seeking the consent or joinder of his co-tenants to the transaction.
“ A tenant in common, therefore, can convey his interest to another person or persons, and, upon that conveyance one tenancy in common is terminated and a new one arises among the new tenants in common.”
It is clear that Mrs. Cortelyou had the power to convey her undivided one-half interest without any action by her sister.
Next, plaintiff asserts that the purported result here was a combined “ joint tenancy-tenancy in common ”, not authorized by EPTL 6-2.1 (formerly Real Property Law, § 65) which permits only estates in severalty, joint tenancy, tenancy in common and tenancy by the entirety. The plaintiff says that if the deeds were given effect, Alwina E. Dinger would be a tenant in common with Dorothy Dinger Cortelyou as to an undivided one-half interest in the property and at the same time- would be a joint tenant with Mrs. 'Cortelyou in another undivided one-half interest. This is claimed not to fulfill the necessary requirements of a joint tenancy set forth in New York Jurisprudence '(Yol. 13, Cotenancy and Joint Ownership, § 3): “ Joint tenancy is an estate held by two or more persons^ jointly, with equal rights to share in its enjoyment during their lives, *1011 and having as its distinguishing feature the right of survivor-ship or jus accrescendi. In order to establish a joint tenancy, four requisites must exist, namely: the interests of the tenants must be the same; the respective interests must accrue by one and the same conveyance; they must commence at one and the same time; and the property must be held by one and the same undivided possession or right to possession. In other words, there must be four unities: (1) unity of interest, (2) unity of title, (3) unity of time, and (4) unity of possession or seisin. If any one of these elements is lacking, the estate will not be one in joint tenancy.” This position overlooks the fact that the joint tenancy applies only to the undivided one-half interest formerly held by Dorothy Dinger 'Cortelyou as a tenant in common with her sister. After the deeds were signed and delivered, Mrs. Cortelyou held this half as a joint tenant with her sister. Expressed another way, the sister, Alwina E. Dinger, held an undivided one-half interest in the property as a tenant in common with Mrs. Cortelyou and herself, who held the other half as joint tenants; and the “four unities” are present as to this half.
The plaintiff cites no statutes or cases which forbid this, and, in fact, Matter of Buttonow (49 Misc 2d 445 [Sup. Ct., Queens, 1966]) upheld substantially the same result. There, Anelia M. Balkuowski conveyed real property in 1952 to herself, to her daughter, Josephine Katherine Buttonow, and to the daughter’s husband, Alexander M. Buttonow, by a deed which provided that the conveyance was running to ‘‘ Anelia M. Balkuowski, widow and Josephine Katherine Buttonow, married to Alexander and Alexander M. Buttonow, married to Josephine Katherine, Jointly” (49 Misc 2d 446). The mother died in 1957 and devised her interest in the property to her daughter. Thereafter, the daughter was adjudicated an incompetent and her marriage was annulled in 1964. The issue was what interest the daughter had in the proceeds of the sale of the real estate.
It was stated: ‘ ‘ This court holds, however, for the reasons stated below, that the conveyance under consideration gave a one-half interest to the incompetent and her husband as tenants by the entirety and a one-half interest to the mother as tenant in common, which interest passed, upon the mother’s death, to her daughter, thereby giving the daughter, upon the annulment of her marriage, a three-fourths share of the property.” (49 Misc 2d 446.)
Pertinent here is the following from the Buttonow opinion: “ Therefore, since the mother was a tenant in common as to half of the property, on her death her share passed by testa *1012 mentary disposition to her daughter who became the owner of the mother’s half as a tenant in common and, thereafter the annulment of the daughter’s marriage terminated the tenancy by the entirety created with respect to the other half of the property, leaving the daughter, at the time of the annulment of her marriage, with a three-quarter share of the parcel.” (Id., p. 448.)
After the mother died and before the marriage was annulled, the daughter owned an undivided one-half interest in the property as a tenant in common with her husband and herself, who held the other half as tenants by the entirety. The court agrees with this holding and sees no reason why, herein, that Alwina E. Dinger could not have held an undivided one-half interest in the property as a tenant in common with her sister and herself, who held the other undivided one-half interest as joint tenants.
It is clear that Mrs. Cortelyou had the legal right to convey her interest and that the resulting estates did not violate any statute or create a ‘ ‘ new ’ ’ type of tenancy.
Section 256 of the Real Property Law provides: “ In any deed by an executor of, or trustee under a will, the words 1 together with the appurtenances and also all the estate which the said testator had at the time of his decease in said premises, and also the estate therein which said grantor has or has power to convey or dispose of, whether individually or by virtue of said will or otherwise, ’ must be construed as meaning, together with all and singular the tenements, hereditaments and appurtenances thereunto belonging, or in anywise appertaining, and the reversion and reversions, remainder and remainders, rents, issues and profits thereof; and also all the estate, right, title, interest, property, possession, claim and demand whatsoever, both in law and equity, which the said testator had in his lifetime, and at the time of his decease, or which the said grantor has or has power to convey or dispose of, whether individually or by virtue of the said last will and testament or otherwise, of, in and to the said granted premises, and every part and parcel thereof, with the appurtenances.”
These are practically the very words contained in the deeds executed by Mrs. Cortelyou and the statute is crystal clear in stating that such words will operate to convey a grantor’s individual interest. To that extent the deeds were perfectly valid. She could have avoided this result by expressly reserving her rights as provided in section 245 of the Real Property Law, but this she failed to do.
*1013 There appears to be only one ease dealing with section 256 and that is Stephens v. Craigen Co. (117 Misc. 418 [Sup. Ct., Kings, 1921]). The plaintiff’s husband died leaving a will devising his real property to his wife and children. The plaintiff wife as executrix sold part of the premises to the defendant’s predecessors in title. The deed recited that she conveyed ‘ ‘ all the estate therein which the party of the first part has or has power to convey or dispose of whether individually or by virtue of said will or otherwise ” (117 Misc. 419). The plaintiff sought to establish and recover a dower interest in this property.
The court granted judgment for the defendant, holding that the deed effectively conveyed the individual interest of the plaintiff executrix, i.e., her dower rights, even though it was an executor’s deed signed as such. The court said:
“ The intention of the parties as disclosed by the papers is clear enough. The wording of the habendum clause states plainly that all the estate of the grantor not only as executor but also as an 1 individual ’ and 1 by virtue of said will or otherwise ’ was to be conveyed. In the face of such language only a specific reservation of the right of dower could except it therefrom. * * * This language of the deed is verbatim the language of section 256 of the Real Property Law, which taken together with section 245 seems to provide a direct answer to plaintiff’s claim. The plaintiff must be held to be estopped from now claiming an interest in this land in the face of her deed.” (117 Misc. 420-421.)
Similarly, sections 256 and 245 require rejection of the claim asserted by Mrs. Cortelyou’s husband in this action. (See 30 A. L. R. 944; cf. Mayer v. Crandall, 285 App. Div. 723, 728 [3d Dept., 1955].) The result is not changed by the words “ As Executrix, etc.” typed under Mrs. 'Cortelyou’s signature, in view of this language in the deeds and section 256.
Although the foregoing warrants summary judgment in favor of the defendants, the court is constrained to point out another reason, based on another theory, why it feels the defendants should prevail. There is no serious dispute to the fact that Mrs. Cortelyou and her sister had agreed, prior to the time their mother’s estate was closed out, that they would hold the property in such a way that the survivor of them would get it all. They discussed their wishes at length with the attorney for the mother’s estate, as set forth in his affidavit submitted on this motion. They were also aware that as matters then stood this would not be accomplished, so they agreed that Mrs. *1014 Cortelyou would sign executor’s deeds running to them both as joint tenants; these deeds, in fact, recited “ the mutual agreement of the grantees
The deeds, of course, did not accomplish the desired result. As has been shown, Alwina retained her undivided one-half interest as a tenant in common with her sister and herself, who held the other undivided one-half interest as joint tenants.
Mrs. Cortelyou, however, could have successfully brought an action in her lifetime to compel the execution of a deed by Miss Dinger creating the joint tenancy they had agreed upon. The defense of the Statute of Frauds would have failed both because Mrs. Cortelyou had fully performed her part of the bargain and because equity will not permit the statute to be a shield for fraud or injustice. (Foreman v. Foreman, 251 N. Y. 237 [1929]; Sinclair v. Purdy, 235 N. Y. 245 [1923]; Wood v. Rabe, 96 N. Y. 414 [1884]; General Obligations Law, § 5-703, subds. 1, 4.) If Miss Dinger had predeceased Mrs. Cortelyou, the latter could have maintained a similar action against her devisees or anyone else asserting claims like the one made by Mr. Cortelyou in this suit.
Since, in fact, Alwina E. Dinger survived, the result is the same whether the deeds are upheld or the agreement is upheld.
It is also believed that the equitable doctrine of laches should be applied here and that the plaintiff should be estopped from asserting his claim. Mrs. Cortelyou signed the deeds in 1955 and had them recorded and delivered to Miss Dinger in 1956. Five months after her death in May, 1968, part of the lands were conveyed to bona fide purchasers who relied on the deeds signed and recorded by Mrs. 'Cortelyou. This suit, commenced in mid-1969, was the first notice given to anyone that the deeds were contested.
In Mayer v. Crandall (285 App. Div. 723, supra [3d Dept., 1955]) the plaintiff was the sole devisee under her deceased father’s will and the administratrix, c.t.a. A 'California resident, she executed a power of attorney describing her as administratrix and authorizing her lawyer to sell any property that belonged to the estate; he thereafter sold real estate to the defendants. Several years later she instituted an ejectment action against the defendants claiming that her execution of the power of attorney was done in her capacity as administratrix and not individually, and that since title vested in her at her father’s death by virtue of the will, the power of attorney was not sufficient to pass title. Judgment for the defendants was affirmed on several grounds, but the following language *1015 is germane to this action: “At common law the passing of a long period of time without the assertion of any right to possession by a legal owner could be treated by the triers of the fact in an action for ejectment as an abandonment of the right to possession (Whitney v. Wright, 15 Wend. 171). Even without asserting the principle of estoppel which, if pleaded, would almost certainly be applicable to a case like this where the complaint shows possession by defendants for nine years without the institution of an action by plaintiff or other assertion of right, and during which time improvements large in proportion to the value of the land were made, some such principle as that considered in Whitney v. Wright should be applicable.” (285 App. Div. 729.)
As for the claim that the power of attorney did not authorize a sale of the plaintiff’s individual interest, the court said: “ It is commonly held, for example, that an heir may ratify an unauthorized sale by an executor under circumstances which would in the first place have required judicial authority. (33 C. J. S., Executors & Administrators, § 273): ‘ An unauthorized sale of real estate * * * is binding on the heirs or devisees if it is ratified by them ’. Had this plaintiff, who had the legal title to the land, sold it as administratrix, she could scarcely argue later in her capacity as owner of the fee, that as administratrix she had no power to sell. Ratification would be inherent in her own official act and there would be an effective merger of her power as owner and administratrix.” (Id., p. 728.) (See, also, Stevenson v. Stevenson, 32 A D 2d 675 [2d Dept., 1969].)
The defendants’ motion for summary judgment is granted and the plaintiff’s motion is denied.