*562 OPINION OF THE COURT
Jack M. Battaglia, J.
In these two actions, consolidated for trial held on July 28 and 29, 2005, the court must determine which of two related corporations, each represented by the same corporate officer and shareholder, is bound on the contracts that are the subject of the actions. In action No. 1, C & C Children’s Wear Ltd. is suing Bambini By Marco Evani, Inc. for $2,757.57, the total purchase price of children’s clothing allegedly sold to that corporation. In action No. 2, Falc USA Inc. is suing Bambini By Marco Evani, Inc. for $10,294.08, the purchase price of children’s shoes allegedly sold to that corporation.
Defendant Bambini By Marco Evani, Inc. does not dispute that the contracts were made, that goods conforming to the contracts were delivered and accepted, and that the respective purchase prices have not been paid. Defendant contends that plaintiffs’ contracts were with Bambini of Scarsdale, Inc. Defendant Bambini By Marco Evani, Inc. operates a retail store in Manhattan, while Bambini of Scarsdale, Inc. operated a retail store in Scarsdale. The issue is of significance beyond the viability of these actions against defendant, because the Scarsdale store is no longer in business, and it appears that any judgment against Bambini of Scarsdale, Inc. would be uncollectible.
It appears from a credit application submitted to plaintiff Falc in September 2000 that Bambini By Marco Evani, Inc. was incorporated in 1994, and has operated a Manhattan store since then. Bambini of Scarsdale, Inc. was incorporated in January 2004, and the Scarsdale store was opened in March of that year. The president of both corporations is Sergio Iaccarino, who testified at trial. Mr. Iaccarino is a shareholder in both corporations, but the other shareholders in the two corporations are not the same. Neither plaintiff contends that Mr. Iaccarino is liable on the respective contracts, or that either corporation is the alter ego or agent of the other. The two actions were tried on the premise that only one of the corporations is bound on the contracts, and neither plaintiff contended to the contrary. The dispute is about which corporation.
Perhaps surprisingly, there appears to be no case law that addresses a similar issue. In Key Intl. Mfg. v Morse/Diesel, Inc. (142 AD2d 448 [2d Dept 1988]), an officer acted for two corporations, but one of the corporations was a subsidiary of the other, and the issue was whether the subsidiary was the agent of the *563 parent (see id. at 453-454). There is no evidence that Bambini of Scarsdale, Inc. is a subsidiary of Bambini By Marco Evani, Inc., and, as noted, no agency relationship is alleged.
In various circumstances, however, the case law is consistent that contractual intent determines whether an individual or corporation is bound to a contract. (See Skyline Enters, of N.Y. Corp. v Amuram Realty Co., 288 AD2d 292, 293 [2d Dept 2001] [“misdescription”]; Protection Indus. Corp. v Kaskel, 262 AD2d 61, 61 [1st Dept 1999] [individual or corporation]; Universal Indus. Corp. v Lindstrom, 92 AD2d 150, 151-152 [4th Dept 1983] [preincorporation transaction]; Mayer v Crandall, 285 App Div 723, 725-726 [3d Dept 1955] [individual or estate]; Mail & Express Co. v Parker Axles, Inc., 204 App Div 327, 328 [1st Dept 1923] [“misnomer”]; Bronx Hosp. v Grolier Socy., 88 Misc 3, 3-4 [App Term, 1st Dept 1914] [individual or corporation]; Spanierman Gallery, PSP v Love, 320 F Supp 2d 108, 111 [SD NY 2004] [“misnomer”].)
As with contractual intent generally, it is not the subjective intent of one party that governs, but the “shared . . . intention” as to who should be bound. (See Weeks Stevedoring Co., Inc. v Raymond International Builders, Inc., 1995 WL 766309, *7, *5-7, 1995 US Dist LEXIS 19266, *20, *15-20 [SD NY, Dec. 28, 1995] [applying New Jersey law]; see also Bartsch v Bartsch, 54 AD2d 940, 940 [2d Dept 1976].) And as with contractual intent generally, the “course of dealings and the relations between the parties and the language of the instrument itself” will determine the “shared . . . intention.” (See Mayer v Crandall, 285 App Div at 726; see also UCC 1-205 [3]; 2-208 [1].)
Both C&C Children’s Wear and Falc USA had done business with Bambini By Marco Evani, Inc. before the transactions that are at issue here. Particularly under such circumstances, neither corporation had an obligation to investigate whether Mr. Iaccarino was acting on behalf of a different corporation. (See Tarolli Lbr. Co. v Andreassi, 59 AD2d 1011, 1012 [4th Dept 1977]; Orient Mid-E. Lines v Albert E. Bowen, Inc., 458 F2d 572, 576 [2d Cir 1972].)
Action No. 1/C & C Children’s Wear
The evidence does not allow for a determination as to how and when the contracts were made between C&C and the buyer. But, “[a]n agreement sufficient to constitute a contract for sale may be found even though the moment of its making is undetermined.” (UCC 2-204 [2].)
*564 The only writings with respect to the transactions being sued upon that were introduced into evidence are five invoices, two dated March 2, 2004, two dated March 11, 2004, and one dated March 31, 2004. Four of the invoices show an “order date” of March 2, 2004, the fifth an “order date” of March 31, 2004.
Three of the invoices state that the goods were “Sold To” “Bambini Scarsdale”; the other two state “Bambini Scars.” All show an address in Scarsdale, and the goods were, in fact, shipped to and accepted at the Scarsdale store. All of the invoices except that of March 31 show telephone and fax numbers in Manhattan; the March 31 invoice shows telephone and fax numbers in Westchester. (Mr. Iaccarino testified that the Scarsdale store did not have telephone service when the earlier orders were placed.) The invoices show a “Oust. Id.” number for the buyer, 1208.
C & C had on two previous occasions sold goods to “Bambini Marco Evani.” Invoices dated January 15, 2003 and March 18, 2003 not only show that name in the “Sold To” space, but show a “Gust. Id.” number for the buyer, 935, which is different from the number that appears on the invoices in this action. This difference was not explained by C & C at trial. The clear inference is that the different number was used to identify a different buyer, and it supports defendant’s contention that C & C understood that the buyer on the transactions at issue was Bambini of Scarsdale, Inc. rather than the buyer on the earlier transactions, Bambini By Marco Evani, Inc.
Mr. Iaccarino testified that he made it “perfectly clear” to C & C that the Scarsdale store was operated by a different corporation than the Manhattan store, and that the name of the “new corporation” was “Bambini of Scarsdale.” He said that he spoke to a “Miss Carmelita” at C & C.
Joseph Zofnat, C & C’s vice-president of finance, also testified at trial. Mr. Zofnat prepared the subject invoices, and testified that he understood “Bambini Scarsdale” to be the same as “Bambini Marco Evani.” But Mr. Zofnat did not take any of the orders, and acknowledged that he never spoke to Mr. Iaccarino. And, as noted, Mr. Zofnat did not explain the different customer identification numbers on the invoices.
Considering the documentary evidence and the testimony, including the lack of any testimony to contradict Mr. Iaccarino’s that he had advised C & C that the buyer was Bambini of Scars-dale, Inc., the court finds and concludes that C & C has failed to carry its burden of proving any contract with Bambini By Marco *565 Evani, Inc. Its action against defendant, therefore, must be dismissed.
Action No. 2/Falc USA
As with C & C Children’s Wear, the evidence does not allow for a determination as to how and when the contract was made between Falc USA and the buyer, and the only writing with respect to the transaction is, in this case, a single invoice. Similarly, the goods were shipped to and accepted at the Scars-dale store.
But there are significant differences. Falc’s invoice dated March 11, 2004 identifies the buyer as “Bambini” at a Third Avenue, Manhattan address. This is consistent with the “New Account/Credit Application” that Mr. Iaccarino submitted to Falc in September 2000, which showed the corporate name as “Bambini Inc.” There is no suggestion of a third “Bambini” corporation, and the parties tried the case on the assumption that “Bambini Inc.” and “Bambini By Marco Evani, Inc.” are the same corporation.
Also unlike the contracts with C & C Children’s Wear, which covered “stock” items, the shoes ordered from Falc were manufactured in Italy on the basis of orders accepted six months prior to delivery. This means that the order that ripened into this contract had to have been placed before Bambini of Scars-dale, Inc. was incorporated in January 2004. That the new corporation did not exist when the contract was made would not preclude its being bound, if that was the intention, since the corporation accepted the shoes. (See Universal Indus. Corp. v Lindstrom, 92 AD2d 150, 152 [4th Dept 1983].)
Federica Tuaty, Falc’s vice-president, testified that Mr. Iaccarino did not inform Falc that he was acting for a new corporation, and that Falc did not learn of the store in Scarsdale until February 2004, when Mr. Iaccarino asked for shipment to Scars-dale. As she put it, “he came as Bambini, as he always does,” and, had he mentioned a new corporation, Falc would have required a credit application.
Mr. Iaccarino testified that he had informed Falc that he was acting for a new corporation, but he could not remember whether he spoke to Ms. Tuaty or her husband, who is also active in the business. In any event, he also testified that he did not advise Falc of the name and address of the new corporation, or the identity of the investors, until January 2004, after the lease was signed. Again, that was well after the contract had been made.
*566 Defendant makes much of the fact that the number of shoes ordered would have been unmanageable in the limited space of its Manhattan store, and that, according to Mr. Iaccarino, Falc would not permit them to be sold at the new location of the Manhattan store (which had moved from Third to Madison Avenue) because of competition with another store that was selling Falc shoes a short distance away. But even accepting all that, the fair inference would be that the shoes subject to this contract would be sold at a store in Scarsdale, not that the contracting party would be a new corporation formed to operate that store.
Noting, finally, that defendant did not object to its identification as the buyer on Falc’s invoice, the court finds and concludes on all the evidence that Bambini By Marco Evani, Inc. was intended to be the contracting party. Even accepting Mr. Iaccarino’s testimony, it would not have been reasonable for him to conclude that Falc would contract with, and rely on the credit of, a corporation about which it knew nothing until months after the contract was made and commencement of the manufacture of the goods.
As a defense, however, defendant contends that, because the Scarsdale store would be a new market for Falc products, Falc had agreed that the shoes could be returned or exchanged if they were not sold by the end of the season. According to Mr. Iaccarino, this agreement had been made with Ms. Tuaty’s husband, who did not testify at trial.
There is at least a serious question as to whether any such unqualified right to return the goods would be enforceable without a writing. (See UCC 2-326 [1], [3].) In any event, Mr. Iaccarino testified that, at the end of the season, 220 pairs were remaining of the 312 that were sold under the contract. Ms. Tuaty acknowledged that Falc would generally exchange shoes for different styles, colors or sizes, but only for 10 or 15 pairs, and only if the request was made during the season. As to past dealings, Mr. Iaccarino’s testimony was consistent.
Considering all the evidence, the court finds and concludes that Mr. Iaccarino could not have reasonably understood that the contract could be, in effect, rewritten as to more than two thirds of the shoes that were manufactured to defendant’s order. The testimony of Mr. Iaccarino and Ms. Tuaty also differed on the marketability of the shoes that defendant wanted to return. But since defendant ultimately liquidated all but 70 pairs at a price of $5 per pair, when the average wholesale price *567 had been $40 per pair, it appears that Ms. Tuaty’s testimony was more credible on this point.
In action No. 1, judgment is awarded to defendant, dismissing the verified complaint, without prejudice to an action against Bambini of Scarsdale, Inc.
In action No. 2, judgment is awarded to plaintiff for $10,294.08, with interest from July 1, 2004, plus costs.